MARY BRENNEN, Appellee, *vs.* THE CHICAGO AND CARTERVILLE COAL COMPANY, Appellant.

*Opinion filed October 26, 1909.*

1. APPEALS AND ERRORS—*Appellate Court's approval of verdict settles the facts.* If there is evidence sufficient to go to the jury upon a question of fact, the finding of the jury on that fact, when approved by the trial court and the Appellate Court, settles such fact, and no question of the credibility of the witnesses, or whether the evidence is sufficient to sustain the verdict or whether the weight of the evidence is against the verdict, can be raised in the Supreme Court.

2. NEGLIGENCE—*place where body was found after explosion is not conclusive that deceased was there before.* The fact that the place where the body of a miner was found, after an explosion, was some two hundred and sixty feet beyond the room where he was required to work is not conclusive that he was at that place at the time of the explosion, where there is some evidence that the rebound of the explosion might have blown the body there from the room where deceased was required to work.

3. MINES—*section 18 of the Mines and Miners act is for protection of all the employees.* The provisions of section 18 of the Mines and Miners act relating to the daily examination and inspection of the mines and the daily record to be kept of such inspection are for the protection of all who are employed in the mines, including engineers, firemen, pumpmen, shot-firers, drivers and other workmen and employees.

4. SAME—*a mine manager may also act as mine examiner.* A person who is authorized to act as mine manager in Illinois may also act as mine examiner; but the refusal of an instruction to that effect in a personal injury case is not erroneous, where the defendant's mine manager does not claim to have made any examination or report of the condition of the mine and there is no evidence that he made any such examination.

5. INSTRUCTIONS—*substantial repetitions of instructions may be refused.* It is not reversible error to refuse instructions the substance of which is included in other instructions given to the jury.

6. SAME—*party cannot complain of error in instruction for opponent if his own instruction has same error.* A party will not be permitted to complain, on appeal, of an error in his opponent's instruction where his own instruction contains the same error.

7. EVIDENCE—*in an action for death, proof that deceased supported family is proper.* In an action for negligent killing, proof of the resources of the widow or next of kin, or their financial condition at the time of or since the death of the deceased, is not admissible, but it is not error to allow questions concerning the earnings of the deceased and whether the wife and children were supported by him; and this is true whether the action is under section 33 of the Mines act or under section 2 of the Injuries act. (*Jones & Adams Co. v. George,* 227 Ill. 64, and *McCarthy* v. *Spring Valley Coal Co.* 232 id. 473, distinguished.)

8. TRIAL—*matter of cross-examination rests largely with trial court.* The latitude to be allowed in the matter of cross-examination rests largely in the discretion of the trial court, and a cause will not be reversed for alleged error in rulings on cross-examination unless it is clear that such discretion has been abused.

CARTWRIGHT and DUNN, JJ., dissenting.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Williamson county; the Hon. W. W. DUNCAN, Judge, presiding.

DENISON & SPILLER, (GEORGE C. MASTIN, of counsel,) for appellant:

A servant must be in the discharge of his duties, or in a place where the duties of his employment require him to be, before he can recover damages of his master for injuries received.    1 Shearman & Redfield on Negligence, sec. 190; 4 Thompson on Negligence, secs. 3748, 3750; 2 Labatt on Master and Servant, 1845; 13 Ency. of Pl. & Pr. 893; *Lenk* v. *Coal Co.* 80 Mo. App. 374; *Morrison* v. *Fibre Co.* 70 N. H. 406; *Wright* v. *Rawson,* 52 Iowa, 329; *Kennedy* v. *Chase,* 119 Cal. 637; *Severy* v. *Nickerson,* 120 Mass. 306; *Ellsworth* v. *Metheny,* 104 Fed. Rep. 119.

Where the plaintiff and defendant both have willfully violated the Mining statute, and the injury would not have occurred but for the willful violation of the statute by the plaintiff, the parties are *in pari delicto* and there can be no recovery of damages.    1 Thompson on Negligence, sec. 83;

*Shaffner* v. *Pinchback,* 133 Ill. 410; *Boddie* v. *Brewing Co.* 204 id. 353; *Railroad Co.* v. *Godfrey,* 71 id. 500.

The violation of the statute by the defendant must be the proximate cause of the injury. Where there intervenes between the violation of the statute by the defendant and the injury an independent illegal act on the part of the plaintiff, without which the injury would not have occurred, such independent illegal act of the plaintiff itself becomes the proximate cause of the injury, and the original wrong of the defendant would be the remote cause, for which damages cannot be recovered. 1 Thompson on Negligence, sec. 49; 2 Labatt on Master and Servant, secs. 806-809; 1 Shearman & Redfield on Negligence, secs. 26, 27; 21 Am. & Eng. Ency. of Law, 493.

Where speculation and conjecture have to be resorted to for the purpose of determining whether the injury resulted from the defendant's negligent act or from some other cause, damages cannot be allowed for such injury. *Railway Co.* v. *Birney,* 71 Ill. 391; 8 Am. & Eng. Ency. of Law, 614; *Epperson* v. *Postal Tel. Co.* 155 Mo. 382; *Sorenson* v. *Pulp Co.* 56 Wis. 338; *Searles* v. *Railway Co.* 101 N. Y. 661; *Priest* v. *Nichols,* 116 Mass. 401.

Where an instruction substantially directs the verdict, regardless of defenses which there was evidence fairly tending to prove, the error in such instruction is not obviated by giving conflicting instructions on that question. *Terra Cotta Lumber Co.* v. *Hanley,* 214 Ill. 246; *Pardridge* v. *Cutler,* 168 id. 513; *Milling Co.* v. *Spehr,* 145 id. 335; *Metal Co.* v. *Weber,* 196 id. 526.

It was error to allow the appellee to state that the deceased had other family than appellee and that he supported them. *Jones & Adams Co.* v. *George,* 227 Ill. 64; *McCarthy* v. *Coal Co.* 232 id. 473.

Where a loss of life has been occasioned by reason of a willful violation of the Mining statute, the right of action given to the widow is to recover the direct damages she has

sustained by reason of such loss of life. It is in no sense a right to recover damages "to her means of support." Hurd's Stat. chap. 33, sec. 93.

Either party in a case is entitled to an instruction based upon his theory of the case if there is any evidence to support that theory, and where the trial court has denied this right the Appellate Court should reverse and remand. *Insurance Co.* v. *Anapaw,* 45 Ill. 86; *Eames* v. *Rend,* 105 id. 506; *Railway Co.* v. *Foster,* 175 id. 396.

HARTWELL & WHITE, and R. T. COOK, for appellee:

No conduct of the deceased short of seeking the very injury of which appellee complains could have the effect of barring a recovery when the defendant's willful conduct has brought about such injury. *Coal Co.* v. *Strine,* 217 Ill. 516; *Coal Co.* v. *Beaver,* 192 id. 233; *Coal Co.* v. *Stroff,* 200 id. 483.

The jury have the right to take into consideration the natural instincts which prompt one to the preservation of life and the avoidance of injury and consequent pain and death. *Railroad Co.* v. *Beaver,* 199 Ill. 34.

Contributory negligence by the plaintiff in going into a place in a mine with notice of the dangerous conditions existing is no defense to an action based upon a willful violation of the statute, if an injury results therefrom. *Coal Co.* v. *Strine,* 217 Ill. 516; *Coal Co.* v. *Stroff,* 200 id. 483.

When a mine owner willfully violates the provisions of the statute in the operation of his mine the doctrine of contributory negligence does not apply. *Coal Co.* v. *Beaver,* 192 Ill. 338; *Coal Co.* v. *Strine,* 217 id. 526; *Coal Co.* v. *Abbott,* 181 id. 495.

The title of the Mining act shows conclusively that the object of the statute is to protect the health and safety of all persons employed in the mine. Hurd's Stat. chap. 93; *Davis* v. *Collieries Co.* 232 Ill. 284; *Coal Co.* v. *Greig,* 226 id. 511.

A conscious failure to observe and comply with the provisions of the Mining act, even though no evil intent induces the failure, is a willful violation. *Mining Co.* v. *Carnduff,* 221 Ill. 354.

Under section 18 of the Mines act the mine owner's duty does not cease with making an examination as provided by the statute, but the mine examiner should make a report, in a book kept for that purpose, of the condition of the mine as he found it, before the men are permitted to enter the mine to work. *Coal Co.* v. *Royce,* 184 Ill. 415; *Coal Co.* v. *Rowatt,* 196 id. 156; *Coal Co.* v. *Martin,* 221 id. 460.

- Mr. JUSTICE CARTER delivered the opinion of the court:

This was a suit brought by the appellee under the Mines and Miners act, against appellant, for damages sustained by her through the death of her husband, Peter Brennen, who was killed October 26, 1906, by an explosion in appellant's mine in Williamson county, Illinois. The case was finally tried on four counts of the declaration, each charging a violation of said mining act. Appellant pleaded the general issue, and the trial resulted in a verdict of guilty and assessment of damages in appellee's favor for $4000. An appeal was taken to the Appellate Court, where the judgment of the trial court was affirmed, and this appeal follows.

At the time of his death, and for some time previous, Peter Brennen was employed as a pumpman in appellant's mine. The mine contained a main entry leading south from the bottom of the shaft about two hundred and fifty feet to a point where two entries, called the first and second east entries, left the main south entry and ran parallel, a short distance apart, about two thousand feet east. The rooms mined were known by number, several having been worked out between the main entry and the east end or face of

the first and second east entries. For the purpose of supplying a current of air to the miners, whenever the coal was dug out to a distance of about sixty feet or more a new cross-cut would be made between these two entries and the last old one closed up or "bratticed," as it is called, so that the current of air would be kept to the face of the entry,—that is, the part furthest from the main shaft. The artificial air current was maintained by forcing the air by way of the main south entry into the second east entry, thence along that entry to the furthest open cross-cut, thence through the cross-cut in the partition wall between the entries to the first east entry and back through this last named entry to the main entry, and thence to the air shaft. The last cross-cut furthest east and near the face of said east entries was about opposite room 53, the first east entry extending east some fifty-nine feet and the second east entry extending east about forty-nine feet beyond this cross-cut. Eight or nine months previous to Brennen's death there had been a "squeeze" in said east entries, causing a break, which permitted the water to come in and also left the roof in bad condition. A pump was put in room 39 of the first east entry and a pipe extended from that room east to room 47, where there was a "sump" or depression in which water collected and which it was Brennen's duty to pump out. This required him to visit room 47 daily. After the squeeze occurred work had been abandoned in that part of the mine until a short time before Brennen's death, when other employees of appellant commenced clearing up these entries for the purpose of resuming work. These employees took out the brattice or stopping at a former cross-cut between the two entries near room 41 of the first east entry. As a result the current of air which formerly went east to near the face of the entry made a short circuit through this cross-cut and thence back out through the first entry. The portions of the two entries east of the last named cross-cut thus being largely deprived of their usual

ventilation, partially filled with bad air and dangerous gases. Some two hundred and twenty-five feet east from the open cross-cut opposite said room 41 was room 47, in which was the depression to which the pipe was laid, as heretofore stated, and between the said cross-cut at said room 41 and room 47 it was necessary for Brennen to travel daily in the line of his duty. Brennen was reported missing on the evening of October 26, and upon a search being instituted his body, and that of an Italian by the name of Spesia, were found, both in the first east entry near its face, Brennen's body being about thirty or forty feet west of the last cross-cut and the Italian's body some feet further east. During the search it was discovered that there had been an explosion in the east entries. From its effect it was apparently mainly in the first east entry and started near its face. Its evidences were shown as far west in said entry as room 39,—that is, a little distance west of the open cross-cut opposite room 41. The proof shows that the explosion was a violent one in that portion of the mine. A loaded car, weighing more than a ton, was thrown off the track somewhere between the two open cross-cuts, the evidence being somewhat indefinite as to the exact point. A two-inch water pipe was broken at room 47, and brattices in the closed cross-cuts between the two entries were broken down at several places and timbers and other debris thrown across the roadway.

Appellant insists that there is no evidence in the record to support the verdict, and it presented a peremptory instruction at the close of appellee's evidence, and again at the close of all the evidence, raising this question.

The superintendent of the mine, who was manager at the time of Brennen's death, testified that he told Brennen not to go further east in said entry than room 47. Other witnesses stated that Brennen had told them it was dangerous to go beyond that point. Counsel for appellant argue that as Brennen's body was found some two hundred and

sixty feet east of room 47 he must have gone beyond the point required by his duties, against the orders of the mine manager. Room 47 was between the two open cross-cuts. The testimony tends to show that where two cross-cuts are open, there will still continue a slight circulation of air near the cross-cut farthest from the shaft, and that if gas were collecting there, such circulation might increase the force of an explosion by supplying oxygen. The evidence tends to show, and it is practically conceded in appellant's brief, that there was no inspection of this part of the mine by the mine manager, and no marks near the first cross-cut connecting the first and second entries, nor any mark in any portion of said first east entry near said room 47, to indicate there might be danger from the accumulation of gas. Neither was there any report to the mine manager of the finding of an accumulation of gas or other dangerous condition in said entry, nor any record of such in the book in which the mine manager made his daily report. It is contended that if Brennen went into that portion of the mine east of room 47 before the explosion occurred, where his duties did not require him to go, he was violating the mining statute and that appellee could not recover; that the mine operator owes the men at work in the mine no duty to inspect, ventilate and otherwise keep reasonably safe any portion of a mine except that part where the duties of the men require them to work and to pass in going to and returning from their work. The case was tried and the instructions given to the jury on this theory. The conclusion that we have reached on this record renders it unnecessary for us to decide as to whether this is the proper construction of this law.

Appellant earnestly insists that the fact that Brennen's body was found so far east of room 47 conclusively shows that at the time of the explosion he was in a part of the mine to which his duties did not require him to go. The testimony of some of the witnesses tended to show that the

force of an explosion is first against any current of air that might be coming towards the center of the explosion, and then there will be a rebound, as it were, caused by the air rushing in towards the center of the explosion, and that sometimes the force of the rebound is greater than the first shock, and that the force of this rebound may have carried Brennen's body from near room 47 to the place where it was found. The testimony in behalf of appellant tended to contradict this theory. One of the witnesses stated that it would be most difficult to tell just what the effect of such an explosion would be. We think the evidence was sufficient to submit to the jury the question whether Brennen was east of room 47 at the time of the explosion, and when the finding of the jury on that fact has been approved by the trial and Appellate Courts, "no question of fact as to whether one witness' story is more reasonable or credible than another, whether the evidence is sufficient to support the verdict, or whether the weight or preponderance of the evidence is against the verdict of the jury, can be raised here." *Reiter* v. *Standard Scale Co.* 237 Ill. 374, and cases cited on p. 380.

On the facts as shown the trial court did not err in refusing to take the case from the jury.

Appellant further contends that the court erred in refusing instruction No. 2, which, in substance, stated that as Peter Brennen was a pumpman, section 18 of the mining statute, requiring a daily inspection of the mine to be made and a report of its condition to be kept in a book for that purpose, did not apply to him, as a pumpman is not a miner, as that term is used in said section, the argument being that the term "miners," as there used, designates "those employees who dig and remove the coal from the various working places," and that this does not include engineers, firemen, pumpmen, shot-firers, etc. In *Davis* v. *Illinois Collieries Co.* 232 Ill. 284, a shot-firer was held to come within the provisions of section 20 of this act, and in

*McCarthy* v. *Spring Valley Coal Co.* 232 Ill. 473, a mule driver was held to be within the provisions of the act. We think the provisions of section 18 as to the daily examination and inspection of the mine and the daily record to be kept of such inspection are for the safety and protection of all who are employed in the mine, including engineers, firemen, pumpmen, shot-firers, drivers and other workmen and employees. This instruction was therefore rightly refused.

Instruction 3 asked by appellant stated, in effect, that one who is authorized to act as mine manager in this State can also act as mine examiner. There was no error in refusing the instruction, though it stated the law correctly, for the reason that the mine manager in question did not claim to have made an examination or a report of the condition of the mine, and there is no evidence in the record that he did make such examination. The fourth instruction was properly refused for the same reason.

The court, in refusing the fifth, sixth, seventh, eighth, ninth, eleventh, twelfth, thirteenth, fourteenth, fifteenth and sixteenth instructions offered by appellant did not commit reversible error, as the substance of all was included in other instructions given to the jury. Many minor suggestions are made as to faults in these instructions, which we do not consider it necessary to discuss in detail. "This court has never approved the practice of burdening the trial court with so many instructions" as were offered· in this case. (*Chicago, Peoria and St. Louis Railroad Co.* v. *Woolridge,* 174 Ill. 330.) Those that were given substantially covered the law of the case as contended for by appellant.

Appellant further contends that some of appellee's given instructions were erroneous because they based her right of recovery upon damages to her means of support instead of damages for direct injury by reason of such loss of life, and that in determining such injury it was improper for the jury to take into consideration the effect of Peter Bren-

nen's death upon her means of support. Section 33 of said Mines and Miners act provides that a right of action shall accrue to the widow of a person killed, for damages for the injuries sustained by reason of such loss of life, and it is argued by counsel for appellant that the recovery here must be based on the same class of proof as to the injury as a recovery under section 2 of the Injuries act. (Hurd's Stat. 1908, p. 1185.) Conceding that the character of the proof as to the damages must be the same under both of these acts, we do not think the proof offered on behalf of the appellee was improper or that the instructions given were erroneous. The evidence objected to simply showed that the deceased supported his family with his earnings. This court held in *Pennsylvania Co.* v. *Keane,* 143 Ill. 172, that it was competent to show that the wife, children or next of kin were dependent upon the deceased for support before and at the time of his death, stating (p. 175) that "this view is in consonance with the statute that gives the action, and which provides that such damages shall be given as are a fair and just compensation for the pecuniary injury resulting from the death to the wife and next of kin of the deceased person. It cannot well be said that proof that the wife or next of kin of the deceased were, at and before the time of his decease, dependent upon him for support, or that he was her or their sole support, is wholly immaterial and irrelevant to any point at issue in the case." This doctrine has been quoted with approval in *Swift & Co.* v. *Foster,* 163 Ill. 50, *St. Louis, Peoria and Northern Railway Co.* v. *Dorsey,* 189 id. 251, and *Pittsburg, Cincinnati, Chicago and St. Louis Railway Co.* v. *Kinnare,* 203 id. 388. These authorities are not in conflict with *Chicago and Northwestern Railroad Co.* v. *Moranda,* 93 Ill. 302, *Chicago, Burlington and Quincy Railroad Co.* v. *Johnson,* 103 id. 512, *Chicago and Alton Railroad Co.* v. *May,* 108 id. 288, and *Chicago, Peoria and St. Louis Railroad Co.* v. *Woolridge, supra,* as contended by counsel for appellant.

These last authorities lay down the rule that it is not competent to show the pecuniary circumstances of the widow, family or next of kin at the time of or since the decease of the intestate, and are reviewed and distinguished by this court in *St. Louis, Peoria and Northern Railway Co.* v. *Dorsey, supra*. While it is erroneous to admit evidence of the resources of the widow or next of kin or their financial condition, it is not error to allow questions concerning the earnings of the deceased and whether the wife and children were supported by him. Counsel, in this connection, insist that *Jones & Adams Co.* v. *George,* 227 Ill. 64, and *McCarthy* v. *Spring Valley Coal Co. supra,* are recent cases in which this court lays down a rule supporting their contention on this point. In both these last cases the trial court permitted the person injured, and who was suing in his own name and for himself to recover damages for the injury, to show that he had a wife and children depending upon him for support. This was held error. These cases are clearly distinguishable, on principle, from the one here under discussion.

Appellant further insists that the court erred in giving appellee's instructions 3, 5 and 8, arguing that each of these instructions directed the jury to return a verdict in favor of appellee, regardless of appellant's defense that the deceased met his death by reason of the willful disregard of the orders of appellant's mine manager and assistant manager not to go beyond said room 47. We do not think the jury could fairly construe these instructions as ignoring the defense urged by appellant on the trial below. Moreover, if it be conceded that they did ignore such defense, the third instruction given for appellant must also be held to have ignored this defense. It is a familiar rule that a party has no right to complain of an error in an instruction when a like error appears in an instruction given at his own request. *Chicago and Alton Railroad Co.* v. *Harrington,* 192 Ill. 9; *Spring Valley Coal Co.* v. *Robizas,* 207 id. 226.

It is further insisted that the trial court committed error in its rulings in the cross-examination of certain witnesses of the appellant. The latitude to be allowed in the cross-examination of witnesses rests largely in the discretion of the trial court, and a cause will not be reversed for alleged improper rulings in that respect unless such discretion has been clearly abused. We cannot say, on this record, that there was any reversible error committed by the trial court as to such cross-examination. While the record is not entirely free from errors, we do not think any of them are of such a nature as to cause a reversal of this cause.

The judgment of the Appellate Court will therefore be affirmed.

*Judgment affirmed.*

CARTWRIGHT and DUNN, JJ., dissenting