OLAVES HAGENSON, Appellant, vs. HOGAN HAGENSON et al.
Appellees.

*Opinion filed April 19, 1913.*

1. MARRIAGE—*a marriage contract requires consent of two persons of sound mind.* A marriage contract requires the mutual consent of two persons of sound mind, and if at the time a marriage ceremony is performed one of the parties is mentally incapable of giving intelligent consent to what is done, with an understanding of the obligations assumed, the solemnization is a mere idle ceremony, conferring no rights and leaving the status of each party unchanged.

2. SAME—*question of competency to contract marriage depends upon the particular facts.* While the same mental strength that is necessary to the transaction of business and to competing with an antagonist may not be necessary to enable a party to contract a marriage, yet he must be capable of entering understandingly into the marriage relation; but each case must be judged by its own peculiar facts.

3. SAME—*what does not necessarily show that man was mentally incompetent to contract marriage.* The fact that a man has been suffering from cerebral abscess and that his memory has been affected to some extent does not necessarily show that he was mentally incompetent to contract a marriage, even though he developed symptoms of paresis a few days after the marriage and died about a week later from the bursting of a blood vessel in the brain.

APPEAL from the Superior Court of Cook county; the Hon. MARCUS KAVANAGH, Judge, presiding.

RAY & PEASE, for appellant.

ERNEST SAUNDERS, for appellee Louise Hagenson.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The amended bill of Olaves Hagenson, the appellant, and Carl Hagenson and Hanna Gangestad, filed in the superior court of Cook county, alleged that Helmer A. Hagenson died intestate on August 18, 1911, seized of premises de-

scribed in the bill, without descendants, and leaving complainants and Hogan Hagenson, Hogan Froiland, Bertha Nilsen and Klara Emilie Amundsen, four of the defendants, his next of kin and heirs-at-law. The trustee in a trust deed, the party secured thereby and Louise Hagenson were also made defendants, and the bill charged that on August 8, 1911, a marriage ceremony was performed between Helmer A. Hagenson and Louise Hagenson, (who was then Louise Henderson,) but at that time Helmer A. Hagenson was mentally incapable of contracting a valid marriage; that the performance of the ceremony was procured by fraud of Louise Hagenson, and that the marriage was never consummated. The prayer was that the marriage be declared null and void and the premises partitioned. The defendants, except the trustee, the party secured and Louise Hagenson, were defaulted. The lien of the trust deed was alleged by answer, and Louise Hagenson denied that Helmer A. Hagenson was mentally incapable of contracting a valid marriage or that the marriage was procured by her fraud. Replications having been filed the evidence was heard by the chancellor, who found that Helmer A. Hagenson was of sound mind and competent to enter into the marriage contract; that the marriage was not procured by fraud nor undue influence but that it was never consummated by cohabitation. The decree ordered partition of the premises according to the rights and interests of the parties as found by the chancellor, and an appeal having been granted to the complainants, jointly and severally, it was perfected by Olaves Hagenson, alone.

A marriage contract will be invalidated by the want of consent of capable persons. It requires the mutual consent of two persons of sound mind, and if at the time a marriage ceremony is performed one of the parties is mentally incapable of giving an intelligent consent to what is done, with an understanding of the obligations assumed, the solemnization is a mere idle ceremony, conferring no right

and leaving the status of each party unchanged. (2 Nelson on Separation and Divorce, sec. 650; Schouler on Domestic Relations,—3d ed.—sec. 18.) Perhaps the same degree of mental strength is not required as is essential in the transaction of business, involving the exercise of judgment, reason and experience sufficient to enable the party to compete with an antagonist designing to obtain an advantage and to protect his own interests, yet he must be capable of entering understandingly into the relation of marriage. There is no clear dividing line between competency and incompetency and each case must be judged by its own peculiar facts. In this case Helmer A. Hagenson was about forty-five years old at the time of the marriage, and had been a captain for many years, sailing the lakes each year for six or seven months, from April or May to November or December, and staying in Chicago during the winter, where he had boarded at the same place for fourteen years. He became sick in May, 1911, from earache and violent pains in the head, with a high fever. He was taken to a hospital on May 21, where he was treated by Dr. Burton W. Mack. He was delirious and suffered great pain and his temperature was high. The doctor thought he had typhoid fever, but when the trouble became local he decided that there was a cerebral abscess. An opening was made in his skull back of the ear and four or five ounces of pus came from the cavity. The bone and surrounding parts were involved and a considerable amount of bone was removed. He gradually improved and left the hospital about June 18 and returned to his boarding house, where he remained until August 9. During that interval the ear was always discharging pus and he was in pain, so that it was difficult for him to hear or talk. He had difficulty in understanding others and also in calling things by their proper names. He and Louise Henderson had been betrothed for many years and had been keeping company together for ten years, going to church and other places. A

marriage had been contemplated, but it did not take place because she wanted to learn dressmaking and on account of sickness in her family. The doctor testified for the complainants and was afterward recalled and questioned by the chancellor, and the substance of his testimony was that between the time when Helmer A. Hagenson was at the hospital the first time and his second entrance, on August 9, his mental condition was good, except his memory. Although he had improved after the first operation, he was still troubled with his ear and the discharge, and the question of going back to the hospital was discussed. After the first visit to the hospital, and before his return, the doctor was introduced to Louise Henderson as his intended wife and talked with her about the marriage, and told her she ought to get the opinion of someone else on it. He said he could not see any objection to the marriage, as he understood that she had made an agreement to marry Hagenson long before he was taken sick. In pursuance of the advice Dr. Sanger Brown was consulted on August 7, and he said that Hagenson had not been getting the right treatment or care, and Louise Henderson said if she could take care of him and he would improve she would be willing to marry him. The doctor said that that would be proper; that she could get a nurse's uniform, and by that means could stay at the hospital at night and take better care of him and give the treatment he prescribed. She procured a marriage license and a minister, and the marriage ceremony was performed in the evening of August 8 at the home of her aunt, where Hagenson went with the man with whom he boarded. Several persons were present at the wedding and Hagenson appeared to the minister and others to be all right. There was some talk about the operation he had had and he seemed to be quite merry and happy. The ceremony was performed in the regular manner, congratulations were offered and Hagenson seemed pleased. There was a supper, at which he talked and acted like anyone in his

right mind, and nothing unusual transpired during the evening. At a rather late hour Hagenson and the man with whom he came went home and his wife remained at the home of her aunt. The next day Hagenson was taken back to the hospital under the advice of the doctor, who thought he would get along better there than at his boarding house. The wound required dressing and was discharging often, but up to that time his physical condition was improving and the doctor thought he was going to recover. On his return to the hospital the doctor observed symptoms of paresis, and found that he was not able to carry on a conversation unless one watched him closely and kept his attention. Dr. Mack then obtained a history of the case, with an admission that Hagenson had contracted syphilis eighteen or twenty years before, and he determined that the abscess was of a syphilitic nature. The second or third day the doctor gave him the Wasserman test, which is a blood test for syphilis, and found syphilitic microbes in the blood, from which the doctor concluded he could not get well. He died on August 18, 1911, of apoplexy from the bursting of a blood vessel in the brain. He left an estate of about $3000, and the widow's interest in such an estate would not be very enticing to an adventuress, considering what went with the marriage. Louise Hagenson testified that the doctor at the hospital had never informed her of the nature of Hagenson's disease or that he was sick from a disease from which he would die shortly, and there was evidence that the marriage was not for her benefit but for his, because she thought she could take care of him and help him. In determining whether there was mental incapacity or fraud, much necessarily depended upon the comparative intelligence and credibility of the witnesses, of which we have but limited opportunities to judge. The chancellor, before whom the witnesses appeared and who heard them testify, came to the conclusion that Hagenson had sufficient capacity to understand intelligently the marriage contract into

which he entered and the obligations which it imposed upon him, and we do not find any sufficient reason for saying that the conclusion was wrong.

The decree is affirmed.

*Decree affirmed.*