DOCIA WORMINGTON, APPELLANT, v. SANFORD WORMINGTON, ADMINISTRATOR OF ESTATE OF RICHMOND WORMINGTON, DECEASED, RESPONDENT.

Springfield Court of Appeals. February 4, 1932.

*Leo H. Johnson, Rex McPherson* and *Rufe Scott* for appellants.

*J. T. Burgess, James E. Sater* and *E. C. Medlin* for respondent.

BAILEY, J.—Plaintiff filed her application in the probate court of Barry county, Missouri, under date of September 10, 1929, for her statutory allowances as the widow of Richmond Wormington, deceased, such claims being, respectively for $400 as absoute property and $2000 in lieu of a year's provisions. The claims were contested by defendant administrator, who filed an answer to the claim in the probate court, and upon due trial in that court plaintiff's right to such allowances was denied. In due time she took an appeal to the circuit court of the county and, thereafter, the cause was transferred by change of venue, first to Stone county, and then to the Jasper county circuit court.

In circuit court defendant filed an amended answer setting up in greater detail the same defenses pleaded in probate court. This answer alleges, that, on the —— day of March, 1928, an affidavit was filed in probate court of Barry county, charging that Mr. Wormington was a person of unsound mind and incapable of managing his business affairs; that upon due trial under said affidavit he was, on March 2, 1928, duly adjudged to be insane and incapable of managing his affairs and Sanford Wormington was thereupon appointed his guardian and curator and continued to act as such until his death; that after Sanford Wormington was adjudged insane, plaintiff instituted a suit in the Barry county court, the nature of which was, "to ascertain, determine, settle and set over to her as her individual property all the right she then had or might there-

after have in and to the property of Richmond Wormington;'' (it appears this was in fact a suit for separate maintenance). It was further alleged that, with the authority and approval of the probate court of Barry county, this litigation was settled for the sum of $8000; that thereupon a written contract was entered into which, among other things, provided that, ''the said Dosia Wormington, for and in consideration of the sum of eight thousand ($8000) dollars, the receipt of which is hereby acknowledged, does hereby release and settle all her rights, interest, claims, demands, privileges, dower and statutory allowances that now exist or may hereafter exist in and to any and all of the property both real and personal of the said Richmond Wormington which he now owns or which he may in the future acquire.

'' 'It being the intention of the said Dosia Wormington in accepting the eight thousand ($8000) dollars to forever settle, discharge and waive all rights, interests, claims, demands, privileges, statutory allowances and dower that she might have, by reason of being the wife of said Richmond Wormington if he should precede her in death; and that she nor her heirs nor any person or persons for her, or in her name or behalf, shall or will hereinafter claim or demand any right, title or interest, dower, or statutory allowances in any of the property, either personal or real of the said Richmond Wormington if the said Richmond Wormington should depart this life before the said Dosia Wormington.' ''

It is further alleged that the $8000 was paid plaintiff and her receipt therefore duly executed; that, ''from and after the date of the adjudging of the said Richmond Wormington to be a person of unsound mind he continued under said judgment as a person of unsound mind and under guardianship up to and including the time of his death.

'' 'Defendant further states that the plaintiff since receiving the $8000 as aforesaid has at all times recognized the validity of this contract and has kept and retained the $8000 and has not tendered it into court and has not offered in any way to return the $8000 so received from said contract entered into between the said parties.'

''Defendant further answering states that plaintiff having entered in to the agreement as aforesaid, and received the said sum of eight thousand dollars as aforesaid, is now barred and precluded and in all good conscience is and should be estopped from recovering the allowances asked for in her said petitions against the estate of the said Richmond Wormington, deceased.''

Plaintiff filed a demurrer to the amended answer and also a motion to strike defendant's plea in bar, both of which, were overruled. Plaintiff thereupon filed a reply to defendant's amended answer the material part of which reads as follows: ''For further reply, this

plaintiff does say that in fact the said Richmond Wormington was adjudged to be of unsound mind by the probate court of Barry county on or about the —— day of March, 1928, and incapable of managing his business affairs. That at such time the said Richmond Wormington was living with this plaintiff as her husband, and continued to so live for a considerable time, after which she instituted suit for separate maintenance under which suit the settlement alleged by defendant was made by him with plaintiff, defendant acting for her said husband. That following such settlement and separation, the said Richmond Wormington lived with his son Sanford Wormington, his guardian for a time, and then returned to this plaintiff and became reconciled to her, and lived with her until his death, excepting for a short period of time when said defendant by force took her said husband to the asylum at Nevada, Missouri, on or about the 28th day of October, 1928, and kept him there until December 6, 1928, at which time he was released from such institution by the authorities thereof. That at the time of such reconciliation her said husband Richmond Wormington was not insane, and in fact had not been insane for a considerable time, if at all, his temporary incapacity being produced by diabetes, and hardening of the arteries, from which diseases, together with an attack of the flu, he was suffering at the time of such adjudication by the probate court of Barry county.

"That the said Richmond Wormington offered to and did become reconciled to plaintiff as hereinabove alleged prior to being taken to the said insane asylum at Nevada, and did abrogate and annual such separation agreement and settlement, and continued thereafter to live with plaintiff as her husband until his death as aforesaid on or about the —— day of June, 1929."

Upon the issues thus drawn trial was had to the court without a jury, resulting in a judgment for defendant. Plaintiff has appealed in due form.

At the trial plaintiff made a prima-facie case, whereupon defendant introduced court records and other evidence tending to prove the allegations of the answer. In fact there is no controversy as to the truth of the allegations contained in the answer, but there is a controversy as to the legal effect of the adjudication of insanity in the probate court and as to the settlement of plaintiff's suit for separate maintenance. The trial court took the view that the adjudication of insanity was final and binding and refused to permit plaintiff to introduce depositions and other testimony tending to prove Richmond Wormington was in fact sane during the period he was under guardianship and at the time he was alleged to have effected a reconciliation with plaintiff.

The facts as shown by plaintiff's evidence in rebuttal and necessary to a fair understanding of the case may be briefly stated as follows: Plaintiff and Richmond Wormington, deceased, were married on the 23rd day of April, 1905; they had no children born of their marriage, but each had children by a former marriage; they were still living together as husband and wife on February 25, 1928, residing on a 200 acre farm near Purdy, Missouri. At that time Mr. Wormington was about seventy-seven years of age and plaintiff sixty-eight years of age. It then appears that Mr. Wormington was sick and confined to his home and in some manner it was discovered that a nephew of Mr. Wormington, together with a hired farm hand, had stolen a considerable amount of gold from a secret cache on the farm where Mr. Wormington had hidden it. It then developed that Mr. Wormington, unwilling to trust banks with his money, and without the knowledge of his wife or children, had secreted about $30,000 or $35,000 in gold and securities about his premises. It was following this discovery he was adjudged insane and a guardian appointed, though perhaps not solely because of his mistrust of banks. Later plaintiff and defendant separated and the suit for separate maintenance followed and plaintiff purchased a home with the money derived from a settlement of that case. Plaintiff offered evidence tending to prove a reconciliation had been effected between her and her husband. He visited her at her home. While at her house Mr. Wormington was taken in charge and required to go to Nevada by his guardian and the sheriff, where he was incarcerated for a short time. Upon his parole from that institution, he returned to plaintiff's home and was living with her, without protest from his guardian, from December, 1928, to June, 1929, when he died. It appears that during this period plaintiff attempted, by proper proceedings in the probate court of Barry County, to have Mr. Wormington adjudged competent, but on trial the petition was denied.

Plaintiff's assignment of error No. 1, is as follows:

"The court erred in holding that the judgment of the proabte court was conclusive as to the mental condition of Richmond Wormington."

It is obvious that this question is the crucial point in the case. It must be conceded that, if the decree of the probate court finding Richmond Wormington to be insane was final, then the settlement made by plaintiff, as heretofore set out, by which she waived all marital rights, including the statutory allowances now claimed, bars her from participating in her husband's estate in every particular. To uphold the proposition that a judgment of insanity, the regularity and validity of which has not been attacked, is not binding and final in a case where the supposed insane person thereafter becomes reconciled to his wife, from whom there has been a separation including

a settlement of property rights, but that evidence of his sanity, as a matter of fact at the time of the alleged reconciliation, may be shown by competent evidence, plaintiff relies on a line of cases involving the validity of marriages contracted by persons having been adjudged insane. The leading case of that line appears to be that of Payne v. Burdette, 84 Mo. App. 332.

In that case a suit was instituted by a guardian to obtain a decree annulling the marriage of his ward with defendant. The ward had been regularly declared to be a person of unsound mind and a guardian had been appointed by the probate court. While the ward was under guardianship and the judgment of insanity in force, the ward married the defendant. The question was whether or not the judgment of the probate court was conclusive evidence of insanity.

The Kansas City Court of Appeals held that the judgment of the probate court, adjudging a person insane, is conclusive as to such person's competency to make ordinary contracts, but that marriage does not come within the purview of the statute making the contract of an insane person void.

The court, in referring to the statute, used this language:

"The section reads that those contracts made without the consent of the guardian shall be invalid, which is to say that those made by and with the consent of the guardian would be valid. But in the nature of things this could not apply to marriage, since that is a contract so peculiarly individual and personal as not to permit of any one acting for the party concerned. Therefore, we conclude that that section did not intend to include a marriage contract." [Payne v. Burdette, 84 Mo. App. 332, 1. c. 338.]

It was further held that: "Marriage is a status in which the general public, as well as the immediate individual is concerned. We therefore feel the more inclined to construe our statute as herein stated." [84 Mo. App. 1. c. 338.[

In conclusion the court laid down this general rule, i. e., "In all these matters which a guardian may transact and perform for his ward, the judgment of lunacy should, during the guardianship, be held to be conclusive. But in these matters which cannot be performed by a guardian, such judgment ought not to be conclusive." [84 Mo. App. 1. c. 339.]

Of like import are a number of other cases cited by defendant including Henderson v. Henderson, 265 Mo. 718, 178 S. W. 175; Doty v. Mumma, 264 S. W. 656; In re Guthrey Estate, 226 S. W. 626.

This statute referred to, now section 486, Revised Statutes 1929, reads as follows:

"No contract of any person found to be of unsound mind, as hereinbefore specified, which shall be made without the consent of

his guardian, shall be valid or binding, and such guardian may sue for and recover any money or property which may have been sold or disposed of by his ward without his consent.''

In regard to the effect this provision of the law upon subsequent acts of a ward adjudged to be insane, it has further been held that such adjudication is presumptive but not conclusive evidence of incapacity to make a will. [King v. Gilson, 191 Mo. 307, 90 S. W. 367.]

This latter case is in harmony with the general rule as to testamentary capacity. [See note 7 A. L. R. 602.]

It thus appears that in at least two particulars the courts of this State have firmly established the proposition that the statute above quoted is not conclusive as to mental capacity or incapacity of a ward under guardianship for insanity, i. e., where the ward has entered into a marriage contract, or has made a will. That being true, it is quite evident that if plaintiff had obtained a divorce and property settlement instead of separate maintenance and property settlement in gross, as she did, and had thereafter re-married Richmond Wormington, the adjudication of insanity would not have been conclusive on the question of Richmond Wormington's mental capacity to enter into the marriage contract. It also follows, in the light of King v. Gilson (supra), that had Richmond Wormington made a will, by the terms of which he had restored to plaintiff all her marital rights, the adjudication of instanity would not have rendered the will void but the question of his sanity would have been open to proof as of the time when the will may have been executed. A complete reconciliation, could it be proven and if it were so intended by the parties, might have the effect of placing plaintiff in the same situation she might have been, had there been such a remarriage or had there been such a will, in so far at least, as property rights are concerned. In other words, such a reconciliation between an estranged husband and wife, smacks of the same elements involved in a marriage contract or in the making of a will by which she might be restored to marital rights after a separation agreement. Moreover, a reconciliation between a husband and wife is a matter purely personal to them. The guardian of an insane ward could no more foregive, condone and agree that the past be forgiven and marital relations be restored than he could perform a marriage contract or make a will on behalf of his ward. The act of reconciliation is therefore not an ordinary contract which must be approved by the guardian, but belongs, we think, to that class of personal transactions which the ward alone can perform, and therefore a judgment of lunacy, under the decisions of this State, ought not to be considered as conclusive. The burden was on plaintiff to prove by a preponderance of the evidence that Richmond Wormington was in fact sane at the time of the alleged reconciliation. Evidence was offered by her

tending to prove his sanity but ruled by the court to be incompetent on the theory, as we understand, that the adjudication of insanity was conclusive. Under the view we have taken of the proposition, this ruling was erroneous.

There can be no doubt that the settlement of property rights made by plaintiff with the guardian in this case at the time of her suit for separate maintenance would be binding upon her unless repudiated by a reconciliation. [Wood's Estate, 232 S. W. 675; O'Day v. Meadows, 194 Mo. 588, 92 S. W. 637.]

It devolves upon plaintiff, in the event of a new trial, not only to carry the burden of proving the sanity of Richmond Wormington, deceased, at the time of the alleged reconciliation, but to prove there was in fact a reconciliation by which the former contract of settlement was abrogated. In the event that plaintiff can prove the separation agreement, including the property settlement, was avoided by the resumption of marital relations between her and her said husband, it would not be necessary for her to return, or offer to return the property or its proceeds received in such settlement. Such property would then be classed as a gift or voluntary settlement on her, unless its return had been demanded by her husband as a condition to the alleged reconciliation. [Harrison v. Harrison, 211 S. W. 708; Roberts v. Hardy, 89 Mo. App. 86.]

A distinction should be made between a mere separation agreement and a separation settlement. [See Dennis v. Perkins, 88 Kan. 428, 129 Pa. 165, 43 L. R. A. (N. S.) 1219 and note.] As to whether or not the resumption of marital relations in this case would avoid the property settlement depends, we think, upon all the facts and circumstances as well as upon the manifest intent of the parties as indicated by their conduct and attitude toward each other. That is a question we do not feel called upon to decide at this time.

It follows the judgment should be reversed and the cause remanded. It is so ordered. *Cox, P. J.,* and *Smith, J.,* concur.