Elmer Ertel, Incompetent Person, by D. L. McNeall, His Conservator, Appellant, v. Inez Ertel, Sued as Inez Casley, Appellee.

Gen. No. 9,321.

328

Opinion filed February 24, 1942.

LANCASTER & NICHOLS, of Quincy, for appellants.

WILLIAM J. DIETERICH, guardian *ad litem*. Appellee also joins in brief.

MR. JUSTICE RIESS delivered the opinion of the court.

A suit in chancery was filed in the circuit court of Adams county by D. L. McNeall, conservator of Elmer Ertel, to annul a marriage which had been entered into at Palmyra, Missouri, on October 3, 1940, between the allegedly feeble-minded ward, Elmer Ertel, and the defendant appellee, Inez Casley. Trial was had before the court, and upon submission of certain questions of fact to a jury, there followed a verdict and decree finding that Elmer Ertel at the time of such marriage had "sufficient understanding to know the nature of the contract of marriage and the duties and responsibilities which it created," and the complaint was dismissed for want of equity. From such decree, the conservator has appealed to this court.

Since their marriage, Elmer Ertel and defendant have lived together as man and wife upon a farm owned by Elmer Ertel in Adams county. Ertel, by his guardian *ad litem,* and defendant, by counsel, filed answers and opposed the suit in the lower court and both oppose the action of appellant herein.

Appellant has assigned the following alleged errors on the part of the trial court: Submission to the jury of the issue of fact: "Did Elmer Ertel at the time of

his marriage to Inez Casley on October 3, 1940, have sufficient understanding to know the nature of the contract of marriage and the duties and responsibilities which it created?'' instead of the question submitted by plaintiff appellant: ''Was Elmer Ertel at the time of his marriage to Inez Casley on October 3, 1940, a feeble minded person?''; error in giving certain instructions at the request of the guardian *ad litem;* in refusing to permit two of plaintiff's witnesses to give opinions as to the mental condition of Elmer Ertel; in refusing to permit a physician to give his opinion as to whether any children born to the parties would probably or likely be mental defectives; in refusing to admit in evidence as an exhibit the order of the county court of Adams county entered October 22, 1940, adjudging Elmer Ertel to be a feeble-minded person; in permitting defendant Inez Casley to testify because Elmer Ertel was an allegedly feeble-minded person; in permitting the guardian *ad litem* to cross-examine Elmer Ertel as to matters alleged to be beyond the scope of the direct examination or by leading or suggestive questions; in admission of certain documentary evidence offered by the guardian *ad litem;* in failure of the court to disregard the verdict and make finding that Elmer Ertel was feeble-minded and that his marriage was absolutely void; in overruling motion for new trial and in entering judgment dismissing the complaint for want of equity.

The principal and controlling assignment of error discussed in the respective briefs of the plaintiff conservator on the one hand and of the guardian *ad litem* and appellee on the other concerns the construction and application of a Missouri statute (sec. 2974, Rev. Statutes of Missouri 1929, Vol. I, pp. 883, 884 and sec. 3361, Rev. Statutes of Missouri 1939, Vol. I, p. 781) in effect at the time of the marriage, which provides in part as follows: ''All marriages—between persons

either of whom is insane, mentally imbecile, feeble-minded or epileptic, are prohibited and declared absolutely void.''

Numerous witnesses were examined and heard on behalf of the respective parties, the details of whose testimony need not be given here. Some of the lay witnesses detailed facts concerning the childhood, school life, ability to carry on business transactions; labor and work upon the farm, habits and temper of Elmer Ertel, and in some instances were permitted to express an opinion based upon such detailed facts as to his mental capacity and condition, while in other instances, wherein insufficient or irrelevant facts were related, the court sustained objections to such expressions of lay opinions. From an examination of the abstract and record, we find no prejudicial error in the trial court's rulings thereon. When a lay witness, before expressing an opinion, details specific and relevant facts as a foundation therefor, his opinion based thereon as to the person's mental condition may be expressed; the sufficiency of the facts justifying the answer being largely a matter within the sound discretion of the trial court, and the probative value of such opinion may be appraised by the jury. *Martin v. Beatty,* 254 Ill. 615, 98 N. E. 996; *Graham v. Deuterman,* 244 Ill. 124, 91 N. E. 61. Both parties offered such evidence.

The medical testimony included that of the managing officer of the Lincoln State School and Colony, who testified concerning Ertel's mental capacity, habits and ability to work and stated that in his opinion, Ertel was not insane but was graded as a high class mental defective.

Certain allegedly eccentric conduct of Ertel in childhood was detailed by some witnesses, among them being an incident wherein certain school children had ridiculed Ertel, resulting in resentment and a fight

between him and another boy or boys. The incident is construed in opposite ways by different witnesses. The testimony by his school teachers and some of the students tended to show that he was unable to entirely carry on the required school work; that he had been unable to satisfactorily accomplish the course of study required of average children to advance beyond the fifth grade. On one occasion he gathered a supply of gasoline in numerous containers on the farm which was removed as a source of danger by others. Certain other purported instances of abnormal conduct of Ertel were detailed. As to his mental condition, opposite opinions were expressed by different witnesses.

On his behalf, it was shown that he had raised and marketed certain small crops in a satisfactory manner while on the farm with his late father; that he drove an automobile for a number of years and worked as a farm hand in the neighborhood in a satisfactory manner to a number of his employers; that at the time of his marriage he was aged thirty-two years and that his wife was a widow with two children; that he had inherited an interest in lands and some personal assets from his father and subsequent to his marriage, had acquired the interest of a sister in the 120-acre farm upon which he and his wife now reside. From the mass of testimony offered by respective parties, the jury arrived at its affirmative answer to the written interrogatory submitted as hereinabove indicated.

It is conceded by the respective parties that the validity of the marriage depends upon the provisions of the Missouri statutes and that a construction thereof by the Courts of Review of Missouri, the place of the contract, is relevant herein. This rule is recognized and applied in Illinois in the cases of *Reifschneider v. Reifschneider*, 241 Ill. 92, 89 N. E. 255; *Stevens v. Stevens*, 304 Ill. 297, 136 N. E. 785, and *Fowler v. Lamson*, 146 Ill. 472, 34 N. E. 932. The rule applies except

in cases of marriages contracted in disregard of the statutes of the state of domicile. *Stevens v. Stevens, supra.*

In the case of *Reifschneider v. Reifschneider, supra,* wherein the legality of a marriage entered into in the State of Indiana was in question, the Supreme Court of this State held that at page 97: "When a marriage is shown the law raises a strong presumption in favor of its validity, and the burden is cast upon the party objecting to the validity to prove such facts and circumstances as necessarily establish its invalidity. *Jones v. Gilbert,* 135 Ill. 27." To the same effect are *Flynn v. Troesch,* 373 Ill. 275, 26 N. E. (2d) 91, and *Potter v. Clapp,* 203 Ill. 592, 68 N. E. 81.

Feeble-mindedness, like insanity, is a term that is difficult to define, and proof of its existence is largely one of fact based upon the particular facts and circumstances of each case. There is no clear dividing line between competency and incompetency, and each case must be judged by its own peculiar facts. *Hagenson v. Hagenson,* 258 Ill. 197, 101 N. E. 606; *Flynn v. Troesch, supra.*

While the parties to a marriage contract must have sufficient mental capacity to enter into the status, and proof of feeble-mindedness will render such contract void under the provisions of the Missouri statute, *supra,* such proof of lack of mental capacity must be clear and definite. *Slais v. Slais,* 9 Mo. App. 96. It was held to be sufficient in Illinois if the contracting party has sufficient mental capacity to "understand intelligently the marriage contract into which he entered and the obligations which it imposed upon him." *Hagenson v. Hagenson, supra.* A mere weakness of intellect is not deemed sufficient to invalidate a marriage if the parties are capable of comprehending and understanding the subject of the contract, its nature and probable consequences. *Westermayer v.*

*Westermayer*, 216 Mo. App. 74, 267 S. W. 24; *Hagenson v. Hagenson, supra.*

The guardian of an insane person can make all ordinary contracts for and on behalf of his ward, but he has no power to make a marriage contract; such contract between the ward and his wife being by its nature personal to the persons entering therein. *Westermayer v. Westermayer, supra; Payne v. Burdette,* 84 Mo. App. 332.

The attitude of the conservator was not in some respects looked upon with favor by the trial court. It appeared from his examination that he had acted as administrator of Ertel's father's estate upon a certificate of nomination signed by Ertel, the only resident child; and in his testimony, he stated that in his opinion Ertel was mentally competent to understand and make such nomination. It was further testified to by both Ertel and his wife that prior to their marriage, the conservator met them while riding home on a Sunday in a buggy and suggested that they marry and that Elmer Ertel purchase the 60 acre or half interest of his sister residing in Iowa to the farm and that they move upon the same; that subsequently the conservator, a banker, prepared the papers and carried through such transaction conveying the sister's interest in the farm to Elmer, whereon he has moved and resides since such marriage; that the conservator procured an order for the purchase from the probate court and completed and partly financed this transaction and prepared and approved certain papers in connection therewith. While parts of the conversation are denied by the conservator, the fact remains that he carried through all of these transactions with or on behalf of Elmer Ertel and that since then he, with support of certain relatives of Elmer Ertel, initiated and prosecuted the suit seeking to annul the marriage. It is the opinion of this court that under the statute

of Missouri, as construed by the courts of that State and under similar construction of statutes in this State and the evidence herein, the contract of marriage between these parties was valid and not void *ab initio* as contended by appellant; that if Elmer Ertel possessed sufficient mental capacity to understand the nature, effect, duties and obligations of the marriage contract into which he was entering, the marriage contract between such parties was binding, the parties being otherwise legally competent to enter into the marriage relation. No other ground of invalidity was urged herein.

The burden of proof rested on the conservator who filed this suit against the defendant to affirmatively sustain the cause of action upon the issues joined and upon the lack of mental capacity of Ertel to lawfully enter into the contract in the State of Missouri, and the subsequent collateral finding in the county court as to his mental status or alleged feeble-mindedness was neither competent nor controlling thereon. It may be noted that the latter order was entered on October 22, 1940, 19 days after the marriage of Elmer Ertel on October 3, and that the defendant herein was not a party to that proceeding, nor did that court have jurisdiction to annul a marriage contract. Its decree was not binding upon the Chancellor in the circuit court (*Wormington v. Wormington,* 226 Mo. App. 195, 47 S. W. (2d) 172), nor do we deem the same to be *res judicata* upon the issues joined in this proceeding.

In Illinois, less mental capacity is required to enable a person to enter into the marriage contract than is required for the execution of ordinary business transactions. *Flynn v. Troesch, supra; Hagenson v. Hagenson, supra.* There was testimony before the court and in the record tending to establish that Ertel was capable of transacting and did engage in numerous ordinary business transactions and did perform

work and labor in an acceptable manner to his employers.

It is a matter of common knowledge that many married men or women continue in a satisfactory marital status although they may not possess high grade mentality or be successful in the conduct of business ventures and that many of them are acting with the aid of conservators.

Appellant contends that the trial court erred in permitting leading questions and suggestions and in permitting cross-examination of Elmer Ertel allegedly beyond the scope of the direct examination by the guardian *ad litem*. This was a matter within the sound discretion of the trial court under the circumstances herein. *People v. Gasior,* 359 Ill. 517, 195 N. E. 10. The very purpose of the examination was to develop the condition of Ertel's mind and the cross-examination was a proper exercise and not an abuse of the court's discretion. *Brennen v. Chicago & Carterville Coal Co.,* 241 Ill. 610, 89 N. E. 756.

In view of the construction placed upon the provisions of the Missouri statute by the Courts of Review of that State and of the further fact that it is in line with rules of construction adopted by the courts of Illinois, we are impelled to find that the advisory verdict of the jury on the question of fact submitted was a proper one and that the court did not err in submitting this issue of fact to the jury or in refusing to give the question in the form that the plaintiff desired.

Among the given instructions complained of and specifically discussed in appellant's brief, those submitting to the jury the question whether Elmer Ertel had "sufficient understanding to know the nature of the contract of marriage and the duties and responsibilities which it created" bore directly upon the question of alleged feeble-mindedness as construed by the

courts of Missouri and of Illinois and was a proper question, and when so stated in the instructions, was not erroneous. While we will not discuss each of the instructions, we have carefully examined them and find that when considered together, they properly state the law and no prejudicial error appears in the refusing or giving of any of the instructions to the jury.

A question was asked Dr. Graff, managing officer of the Lincoln School, to which objection was sustained and concerning which plaintiff complains, as follows: "State whether or not in the case of a mental defective such as you found Elmer Ertel to be, whether it is probable or improbable that any child he might have by this marriage would be mentally defective?" The court properly sustained objection thereto and committed no error therein. The issue was one of the validity of a contract entered into pursuant to certain statutory provisions, and this question was not material or relevant to the issues herein.

We find no reversible error in the record and are in accord with the holding of the learned trial court upon both the facts and his construction of the law in all material matters in issue, and the decree of the circuit court of Adams county will therefore be affirmed.

*Decree affirmed.*