JOSEPH PAYTON, Guardian of the Estate of Robert Payton, Petitioner-Appellant, *v.* MARTHA PAYNE, a/k/a Martha Payton, Respondent-Appellee.

First District (2nd Division)    No. 79-2083

Opinion filed November 18, 1980.

James D. Griffith, Ltd., of Chicago, for appellant.

No brief filed for appellee.

Mr. PRESIDING JUSTICE PERLIN delivered the opinion of the court:

Petitioner, Joseph Payton, guardian of the estate and person of Robert Payton, filed a complaint in the circuit court of Cook County seeking to have the marriage of Robert Payton and Martha Payne declared invalid on the grounds that Robert lacked the mental capacity to enter into a valid marriage. (Ill. Rev. Stat. 1979, ch. 40, par. 301.) The court dismissed the petition for want of jurisdiction citing the failure of the petitioner to bring the action within 90 days after acquiring knowledge of the incompetency as required by that statute. A subsequent petition for rehearing was denied and petitioner appealed. The issue presented for review is whether the petition to declare the marriage invalid was timely filed by the petitioner.[1]

The record indicates that Robert Payton was hospitalized in April of 1974. His condition was diagnosed as Alzheimer's disease, a progressively debilitating condition which gradually decreases the mental functions.

---

[1] Plaintiff has not filed a brief as appellee, but this does not affect our disposition of the matter. *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 345 N.E.2d 493.

On May 2, 1974, after his release from the hospital, Robert married Martha Payne. The civil ceremony was not announced to family and friends nor attended by them. Respondent claimed that prior to this date she and Robert lived together as man and wife for 19 years.

On June 21, 1976, an aunt of Robert filed a petition in the probate court seeking to have herself appointed as his conservator. Martha filed a subsequent petition in December of the same year. On May 17, 1977, Joseph filed a petition to have himself named as conservator substituting for the aunt. In a supplement to the petition he alleged that Martha and Robert entered into a pretended ceremony which was not revealed to the public for 10 months and requested the court to declare that Martha is unrelated to Robert. References to the marriage were stricken by the probate court on October 16, 1977, with leave to reinstate if the court found that Martha was unfit and unqualified to serve as conservator.

Martha Payne was appointed conservator on February 3, 1978, on the basis of her position as wife, and served until February 21, 1979, when she was removed for allegedly wasting the estate. During her service as conservator, a citation proceeding was initiated naming her as respondent. A special administrator was appointed for the proceedings, and on November 6, 1978, a jury found that Robert was mentally incompetent and unaware of his property from April 5, 1974, to the end of the year 1975. The conservator was ordered to reconvey the transfers made from Robert to Martha back to the estate.[2]

Petitioner was appointed conservator of the estate and person of Robert Payton, and on April 4, 1979, filed a complaint to have the marriage declared invalid. Robert's brother, Frank Payton, also joined in the suit but was dismissed as a party plaintiff. The complaint alleged, *inter alia*, that at the time the ceremony took place, Robert lacked the mental capacity to understand and consent to the contract of marriage and cited the jury's determination of incompetence in the citation proceeding. As an affirmative defense to the complaint, respondent alleged that petitioner failed to bring an action to declare the marriage invalid within 90 days after petitioner had knowledge of the condition, as required under the Illinois Marriage and Dissolution of Marriage Act, and thus was now barred from seeking relief.

A hearing was held on October 31, 1979, and the court ruled that a jurisdictional question was raised by the affirmative defense, which had to be resolved before the parties could proceed to a hearing on the

---

[2] Petitioner's brief states that an appeal was taken from this judgment, and on December 20, 1979, the cause was remanded for a new trial because of the failure to give the jury separate verdicts for each property transfer date. *In re Estate of Payton* (1979), 79 Ill. App. 3d 732, 398 N.E.2d 977.

merits of the petition. The court noted that according to sections 301 and 302 of the Illinois Marriage and Dissolution of Marriage Act an action to declare a marriage invalid because of mental incapacity or infirmity may be brought by "either party or by the legal representative of the party who lacked capacity to consent, no later than 90 days after the petitioner obtained knowledge of the described condition." (Ill. Rev. Stat. 1979, ch. 40, par. 302(a)(1).) The petitioner acknowledged that he was aware of the condition more than 90 days before filing the action; however, he argued that under the language of the new statute he was not a proper party to seek a declaration. Forty-two days after he was appointed a conservator he filed a petition to have the marriage declared invalid. Petitioner's counsel also directed the court's attention to the fact that petitioner had pursued the matter of the status of the marriage in his petition for appointment as conservator but that the probate court would not rule on that matter.

The court found that there was knowledge within the probate contemplation of incompetence on November 6, 1978, and that the adjudication of incompetency pertaining to Robert's ability to handle his property did not necessarily relate to his competency to handle other affairs. The court then took notice of the possible conflict of interest which existed on behalf of Martha in her capacity as wife and in her role as conservator to protect Robert's best interests. In conclusion, the court ruled that the action was not brought within 90 days after the acquisition of the knowledge of incompetency, and it dismissed the petition for want of jurisdiction.

A petition for rehearing was filed in which petitioner alleged that he had no duty to act prior to his appointment although he had made attempts to raise the validity of the marriage in the probate proceedings. In addition, he alleged that Martha's failure to act cannot be attributed to the incompetent or to his successor conservator. The petition was denied, and this appeal followed.

Prior to the recent codification of a procedure to have a marriage declared invalid, an action of this nature was brought by way of a bill in equity. (*E.g., Larson v. Larson* (1963), 42 Ill. App. 2d 467, 192 N.E.2d 594.) The right to maintain the action on the grounds of mental incapacity was recognized in either of the parties and under certain conditions in third persons. Thus, courts have entertained bills filed by guardians of insane persons to have the marriage of their wards declared null and void on the grounds of the ward's mental incapacity to assent (*Pyott v. Pyott* (1901), 191 Ill. 280, 61 N.E. 88; *Ertel v. Ertel* (1942), 313 Ill. App. 326, 40 N.E.2d 85), and courts have also allowed heirs contesting a will on the basis of the mental incapacity of the testator to include a request that the

testator's marriage be set aside on the same grounds. *Orchardson v. Cofield* (1898), 171 Ill. 14, 49 N.E. 197; *Greathouse v. Vosburgh* (1960), 19 Ill. 2d 555, 169 N.E.2d 97.

The Illinois Marriage and Dissolution of Marriage Act became effective on October 1, 1977. (Ill. Rev. Stat. 1977, ch. 40, par. 101 *et seq.*) Under this statute a declaration of the invalidity of marriage on the grounds of mental incapacity or infirmity may be sought by either party to the marriage or by the legal representative of the party who lacked capacity to consent. This action must be commenced no later than 90 days after the petitioner obtained knowledge of the described condition. (Ill. Rev. Stat. 1977, ch. 40, pars. 301 and 302.) In the case at bar, the trial court determined that petitioner, Joseph Payton, had knowledge of his uncle's incompetence on November 6, 1978. The issue thus presented is whether this knowledge bars petitioner's action as guardian to have the marriage declared invalid. Although petitioner has not cited any cases where this question has been construed under the new statute, and our research has not disclosed any, we do not believe that under the circumstances of this case that petitioner is barred from maintaining the action.

■■ Petitioner has outlined three time periods which relate to the instant case. He first contends that from the effective date of the Act through February 3, 1978, the date on which Martha was appointed conservator, the only parties that could maintain an action under the statute were Martha and Robert, the parties to the marriage. We tend to agree. While there have been instances where a "next friend" was appointed to protect the interests of one of unsound mind who had not been adjudicated incompetent nor a conservator appointed (see, *e.g., Isle v. Cranby* (1902), 199 Ill. 39, 64 N.E. 1065), we do not believe that this was the intention of the legislature in providing that a "legal representative" of the incapacitated party could maintain an action. We believe it more likely that the legislature intended that the term be applied to the guardian of the incompetent party. Therefore, during this time period the statute of limitations would be applicable only to the parties, and if it can be proved that Robert was in fact incapacitated during this period, he could not be held accountable for any apparent negligence or delay in seeking redress through the courts nor affected by statutes of limitation. See *Haas v. Westlake Community Hospital* (1980), 82 Ill. App. 3d 847, 403 N.E.2d 883; *In re Estate of Goldberg* (1937), 288 Ill. App. 203, 5 N.E.2d 863; *Van Buskirk v. Van Buskirk* (1893), 148 Ill. 9, 35 N.E. 383.

■■ During the period in which Martha served as conservator, although petitioner had knowledge of the incapacity, it does not appear that he had standing to bring the action under the statute nor a duty to do so. In addition, there was an apparent conflict of interest which existed with regard to the validity of the marriage on behalf of Martha as wife and

conservator charged with protecting the best interests of her ward. Because of this apparent conflict, we do not believe that the successor guardian should be bound by the failure to act within the time limitations set forth in the statute. (See *In re Estate of Sheehan* (1937), 290 Ill. App. 551, 9 N.E.2d 63; *Wascher v. Lundeen* (1961), 32 Ill. App. 2d 239, 177 N.E.2d 440.) The trial court found it significant that a special administrator had been appointed for the citation proceeding heard on November 6, 1978. However, in view of the limited purpose for that appointment, we do not believe that this knowledge precludes the successor conservator from commencing an action regarding the validity of the marriage.

■■ The record further indicates that the petitioner, individually, attempted to have the matter determined by the probate court as early as May 1977. When the probate court refused to determine the matter in conjunction with the appointment of a conservator, petitioner pursued the matter until he replaced Martha as conservator on February 21, 1979. Once this was accomplished, he filed the complaint to have the marriage declared invalid within the 90-day time frame. We therefore conclude that the petition was timely filed by the guardian, reverse the order of the circuit court dismissing the petition for lack of jurisdiction and remand the cause for trial on the merits.

Reversed and remanded.

STAMOS and HARTMAN, JJ., concur.