*In re* SIMPSON DRISKELL, JR., a Disabled Person (Jean A. Pape, Guardian of the Person of Simpson Driskell, Jr., a Disabled Adult, Indiv. and as a Member of a Class, *et al.*, Plaintiffs-Appellants and Cross-Appellees, v. Wilma Louise Byrd, who now calls herself Wilma Louise Driskell, Defendant-Appellee and Cross-Appellant).

Fourth District   No. 4—89—0926

Opinion filed May 24, 1990.—Rehearing denied June 26, 1990.

G. William Horsley, of Springfield, for appellants.

Grady E. Holley and Robert W. Mueller, both of Holley, Keith & Huntley, of Springfield, for appellee.

JUSTICE GREEN delivered the opinion of the court:

On September 23, 1988, plaintiff Jean A. Pape, as guardian of the person of Simpson Driskell, Jr. (Simpson), a disabled adult, brought suit in chancery in the circuit court of Sangamon County against a defendant designated as "Wilma Louise Byrd, who now calls herself Wilma Louise Driskell" (Wilma). Two of the counts of the complaint requested a declaration that a marriage between Simpson and Wilma occurring on August 20, 1985, was void. Other counts requested a determination that plaintiff, in her individual capacity, and many others who had remainder or reversionary interests in the estate of Simpson's grandfather be designated a class and that a constructive trust for their benefit be established as to funds being administered by the guardian of Simpson's estate.

On September 25, 1989, Pape, in her capacity as the guardian of Simpson's person, filed a document purporting to be in both the chancery case and the probate proceedings concerning the guardianship of Simpson's person and estate. The document was designated as a peti-

tion for leave to file a "counterclaim as part of an answer to a petition," that being a petition filed in the probate proceeding by Wilma to have Pape removed as guardian of Simpson's person. The parties are in agreement that, at this stage, the chancery case and the guardianship proceedings were consolidated by the circuit court. The counterclaim alleged that the marriage between Simpson and Wilma was invalid for the reasons set forth in the chancery proceeding.

After various proceedings and an evidentiary hearing, the circuit court entered an order on November 6, 1989, from which this appeal is taken. In one count of the complaint, Pape sought to have the marriage set aside on the grounds that Simpson was incompetent to enter into the marriage. In the November 6 order, the circuit court granted summary judgment to Wilma on this count, ruling the count was barred by a statutory period of limitation which we later describe. The court also heard evidence on the question of fitness and made a conditional finding that, if the count was not barred as untimely, Simpson was, in fact, mentally incompetent to marry. Another count sought to set aside the marriage because it took place on the date of the issuance of the marriage license and in violation of a statutory one-day waiting period. (Ill. Rev. Stat. 1985, ch. 40, par. 207.) The court also entered judgment for Wilma in that regard, ruling that a violation of the waiting period was, of itself, insufficient to invalidate a marriage.

The circuit court allowed Pape's motion for leave to file a "counterclaim" to the petition for her removal. The court then announced that Wilma was not required to respond to the counterclaim. As part of the order entered November 6, 1989, the court then denied the counterclaim and also denied Wilma's petition to discharge Pape as guardian of Simpson's person. The court certified the various described persons holding remainder or reversionary interests as a class but did not proceed further in regard to the request for declaring a constructive trust. The court then found, pursuant to Supreme Court Rule 304(a) (107 Ill. 2d R. 304(a)), that no just reason existed to delay enforcement or appeal. The court also pointed out that under Supreme Court Rule 304(b)(1) (107 Ill. 2d R. 304(b)(1)), the final determination of the status or right of a party in a probate proceeding is an appealable order even though not all claims of all the parties to the consolidated proceeding have been finally determined.

Pape has appealed all of the orders entered against her in either her personal or representative capacities. Wilma has cross-appealed the contingent finding that Simpson was incompetent to enter the marriage. We affirm.

The issue of whether Pape's action to declare the marriage invalid because of Simpson's lack of mental capacity to enter the marriage involves sections 301(1) and 302(a)(1) of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1985, ch. 40, pars. 301(1), 302(a)(1)). Section 301(1) states a "court shall enter its judgment declaring the invalidity of a marriage" when "a party lacked capacity to consent *** at the time the marriage was solemnized, either because of mental incapacity or infirmity." (Ill. Rev. Stat. 1985, ch. 40, par. 301(1).) Section 302(a)(1) states:

"Time of commencement. (a) A declaration of invalidity under paragraphs (1) through (3) of Section 301 may be sought by any of the following persons and must be commenced within the times specified:

(1) for any of the reasons set forth in paragraph (1) of Section 301, by either party or by the legal representative of the party who lacked capacity to consent, no later than 90 days after the petitioner obtained knowledge of the described condition." Ill. Rev. Stat. 1985, ch. 40, par. 302(a)(1).

In the case of *In re Marriage of Drews* (1986), 115 Ill. 2d 201, 503 N.E.2d 339, while ruling a guardian of the person of a mentally disabled person cannot seek a dissolution of a ward's marriage, the court stated such a guardian had capacity to seek a declaration a marriage is void and should be annulled. No authority to the contrary has been presented. Here, the record shows Pape was appointed guardian on June 6, 1988, and waited until September 23, 1988, to bring the instant action. The parties agree Pape had knowledge of Simpson's condition during all of this time. Thus, the 90-day period of section 302(a)(1) of the Act had expired before the case was filed.

■■ Plaintiff points out that at common law, courts would annul a marriage upon a showing that a party to the marriage lacked the mental capacity to marry. (*Pyott v. Pyott* (1901), 191 Ill. 280, 61 N.E. 88; *Orchardson v. Cofield* (1897), 171 Ill. 14, 49 N.E. 197.) Pape maintains the action here should be deemed a common law action, and the limitation period of section 302(a)(1) of the Act should not be deemed to be applicable. Assuming *arguendo* that a common law right to seek annulment on some grounds not listed in section 301 still exists, we do not accept a theory that when seeking to annul a marriage for a ground stated in section 301, the legislature did not intend for the limitations of section 302 of the Act to apply. If the General Assembly had intended that the time limits of section 302 should be applicable to actions to seek annulments on section 301 grounds, section 302 would be virtually meaningless, because a party seeking that type of

relief could avoid the provisions of section 302 by designating the action brought as one at common law. We hold the limitation period of section 302(a)(1) was applicable here.

The operation of section 302 of the Act does have problems which we need not confront directly here. In *Payton v. Payne* (1980), 90 Ill. App. 3d 892, 414 N.E.2d 33, a man suffering from Alzheimer's disease married a woman who contended she had been living with him for several years. Nearly four years later, she was appointed his conservator and served for slightly more than one year when a successor conservator was appointed. Well within 90 days of his appointment, the new conservator brought an action to annul the marriage because of his ward's mental incapacity at the time of the marriage. The circuit court dismissed the petition for annulment on the grounds the limitation period of section 302(a)(1) of the Act had expired. The appellate court reversed and remanded. That court held (1) the period between the marriage and the appointment of the wife should not be considered as a part of the 90-day period of section 302(a)(1) because the man was incompetent to proceed on his own; (2) the running of the limitation period was also tolled while the wife was conservator because of her conflict of interest; and (3) the subsequent conservator had known of the man's disability for many months but, the limitation period did not start to run until he was appointed and had the capacity to sue to annul. The judgment of dismissal was reversed, and the cause remanded for hearing on the merits.

Thus, many factors may prevent the 90-day period of section 302(a)(1) from running until a proper guardian of the person is appointed. Not touched by the *Payton* opinion is the effect upon the rights of a successor guardian to bring an action for annulment when a prior guardian has negligently permitted the statutory period to run. However, we need not answer these questions here. We find nothing to have prevented the running of the 90-day period as far as Pape's chancery complaint was concerned.

Section 207 of the Act states:

> "A license to marry becomes effective in the county where it was issued one day after the date of issuance, unless the court orders that the license is effective when issued, and expires 60 days after it becomes effective." (Ill. Rev. Stat. 1985, ch. 40, par. 207.)

The record showed the license was issued on August 20, 1985, and the wedding took place that day. The license stated it was to be effective August 21, 1985. The word "waived" had been typed on the license. Some evidence indicated that the word "waived" on the license

indicated a court order had been entered waiving the one-day waiting period of section 207 and permitting a marriage that day. However, other evidence was to the contrary. The circuit court did not rely upon any court order being entered waiving the waiting period. That court ruled that any failure to wait until August 21, 1985, to have the marriage performed did not invalidate the marriage. We agree.

In *Haderaski v. Haderaski* (1953), 415 Ill. 118, 112 N.E.2d 714, a defendant to a divorce petition based on drunkenness sought to defend on the basis no marriage had taken place. The supreme court affirmed a circuit court decree upholding the validity of the marriage and awarding a divorce. The evidence indicated no marriage license had ever issued although the parties had gone through a proper church ceremony and a certificate memorializing the marriage had been executed. The court concluded that the proper rule was that failure to follow statutory licensing requirements does not render a marriage void unless the statute so provides. The *Haderaski* case was decided before the enactment of section 207 of the Act, but the General Assembly enacted that provision with constructive knowledge of that decision and made no provision providing the failure to follow the one-day waiting period would void the marriage. Furthermore, section 207 is not stated in mandatory language. We deem *Haderaski* to be controlling and hold that any failure to observe the one-day waiting period of section 207 did not void the marriage.

Pape maintains that even if her failure to bring suit to annul the marriage between Wilma and Simpson on grounds of his mental incapacity within the 90-day period bars that court of the chancery complaint, that issue was timely present by her counterclaim in the probate proceeding. She contends the circuit court erred in dismissing that counterclaim. She relies on section 13—207 of the Code of Civil Procedure (Code), which states:

> "Counterclaim or set-off. A defendant may plead a set-off or counterclaim barred by the statute of limitation, while *held and owned by him or her*, to any action, the cause of which was *owned by the plaintiff* or person under whom he or she claims, before such set-off or counterclaim was so barred, and not otherwise. This section shall not affect the right of a bona fide assignee of a negotiable instrument assigned before due." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 110, par. 13—207.)

We conclude Pape's counterclaim in the probate proceedings failed to meet the express requirements of section 13—207 of the Code necessary to negate the limitation of section 302(a)(1) of the Act.

The "action" to which Pape's counterclaim was filed was Wilma's

petition to have Pape removed as guardian of Simpson's person. That "action" was not "owned" by Wilma within the meaning of section 13—207 of the Code. A proceeding to remove a guardian is in the nature of a proceeding on behalf of the State for the purpose of protecting an incompetent ward. (*In re Estate of Sherwood* (1965), 56 Ill. App. 2d 334, 338-39, 206 N.E.2d 304, 307.) Any "reputable person" can bring such an action. (Ill. Rev. Stat. 1985, ch. 110½, par. 11a—3(a).) The "action" was also not "owned" by anyone under whom Wilma claimed.

Similarly, Pape's counterclaim against Wilma did not concern an "action" which she "owned" in the capacity in which she was respondent to Wilma's petition for her removal. Pape was not acting on behalf of Simpson in defending against Wilma's petition. Pape was acting on her own behalf, defending her right to be guardian. Pape had no right as an individual to seek annulment of the marriage. That right was "owned" by Simpson. Pape could seek to exercise that right only on his own behalf and not on her behalf. Section 13—207 of the Code speaks of the right of the "plaintiff" (here Wilma) being "owned by the plaintiff or person under whom he or she claims," but requires ownership of the counterclaim to be in the defendant (here Pape) without reference to anyone under whom the defendant might claim. Thus, Pape was attempting to counterclaim in a different capacity than that in which she was a respondent to Wilma's petition and counterclaimed in regard to an "action" not "owned" by her. Ill. Rev. Stat. 1985, ch. 110, par. 13—207.

■ As we have indicated, after permitting Pape to file the counterclaim, the circuit court indicated to Wilma she need not file a responsive pleading. The record indicates a tacit understanding that the defense of the limitations of section 302(a)(1) of the Act was raised as to the counterclaim. As section 13—207 of the Code did not negate the application of section 302(a)(1) of the Act, the circuit court correctly dismissed the counterclaim.

■ On August 23, 1985, John Ray was appointed guardian of Simpson's person and served until he resigned on June 6, 1988. On November 26, 1985, Wilma filed a petition to have him removed and, on December 31, 1985, he filed a counterclaim seeking to set aside Wilma's marriage to Simpson. The petition for removal was never ruled upon and was rendered moot when Ray resigned. Pape maintains the filing of this counterclaim, which was mentioned in her counterclaim, tolled the running of the 90-day period of section 302(a)(1) of the Act. However, the evidence shows Ray knew of Simpson's disability when he was appointed and more than 90 days elapsed between

his appointment and his filing of the counterclaim. That counterclaim has never been ruled upon. However, even if it is not invalid and can be considered to have been before the court at the time it ruled on Pape's counterclaim, it suffered from the same infirmities as hers as far as overcoming the running of the 90-day period.

Pape maintains the circuit court effectively denied the request for a declaration creating a constructive trust. We disagree. The record clearly indicates the court did not rule upon that issue. The reason why the court made a finding pursuant to Supreme Court Rule 304(a) was because of the pendency of that issue.

For the reasons we have stated, we affirm the portions of the order of November 6, 1989, from which Pape has appealed.

■■ Wilma cross-appealed the contingent finding in the November 6, 1989, order that Simpson did, in fact, lack mental capacity to enter into the marriage. Entry of such an order was appropriate, because, if a reviewing court should hold the limitation period of section 302(a)(1) of the Act did not bar the action to annul the marriage, the finding, if upheld on review, would enable a proper judgment to be entered without the necessity of a further evidentiary hearing. Wilma contends the finding was contrary to the manifest weight of the evidence, and, in any event, the circuit court erroneously applied a preponderance of the evidence standard in making its finding. We disagree. As we will explain, the finding was not contrary to the manifest weight of the evidence and the circuit court applied the proper standard of proof.

■■ We consider the question of the standard of proof first. Many opinions of Illinois courts of review have stated that where a purported marriage is shown, a strong presumption of its validity exists, and the burden is upon the person attacking the marriage to prove its invalidity. (*I.e., Greathouse v. Vosburgh* (1960), 19 Ill. 2d 555, 568, 169 N.E.2d 97, 103; *Crysler v. Crysler* (1928), 330 Ill. 74, 77, 161 N.E. 97, 98.) We have been unable to find a published opinion holding the proof of invalidity need be stronger than the preponderance of the evidence. In an unpublished opinion, this court held that proof must be "strong, distinct and conclusive." (*Diez v. Diez* (1966), 73 Ill. App. 2d 442, 219 N.E.2d 67 (abstract of opinion) (slip op. at 5).) In support of its position, this court relied on *Crysler*, which merely made the statement we have attributed it in regard to the presumption created and the burden on the one attacking the marriage. We conclude that if a higher standard than a preponderance of the evidence is required, some court of review would have so stated in a published opinion. Moreover, *Diez* concerned a charge of fraud and involved a situation where support of a child was in issue. We choose not to follow *Diez*

and, to the extent any precedent is established by its holding as to the standard of proof, we overrule that precedent.

■ The applicable test to determine whether Simpson was competent to marry was whether he had the ability to understand the nature, effect, duties, and obligations of marriage. (*Larson v. Larson* (1963), 42 Ill. App. 2d 467, 473, 192 N.E.2d 594, 597.) He need not have been able to transact ordinary business. (*Ertel v. Ertel* (1942), 313 Ill. App. 326, 335, 40 N.E.2d 85, 89.) We examine the evidence on this basis.

Dr. Herbert Henkel, a urologist who had treated Simpson since February 1982, testified Simpson's mental condition was such he was incapable of making decisions involving his health or personal matters in a reasonable manner. He stated an opinion Simpson would have lacked mental capacity to understand the nature, effect, duties, and obligations arising from a marriage ceremony in August 1985. Dr. Mohammad Irshad had also treated Simpson since February 1982. He diagnosed Simpson as having organic brain syndrome, schizophrenia, confusion, and disorientation. Dr. Kenneth Malmberg diagnosed Simpson as having schizophrenia and Alzheimer's disease in the summer of 1985. He described Simpson as being unable to know what he was doing on August 20, 1985. All of these physicians indicated Simpson also had numerous physical imparities. Several nurses who had attended Simpson at hospitals or nursing homes at times pertinent to August 20, 1985, testified he was difficult to work with, unable to dress or clean himself, and often required restraint.

The case put on by Wilma to negate the contention of Simpson's lack of competence did not have the benefit of the testimony of physicians. A nurse who had admitted Simpson to a hospital in 1985 testified he appeared to understand her explanation of the consent form she tendered him. An ambulance driver who had frequently taken Simpson from the nursing home where he stayed to a hospital stated Simpson often rode in the front seat and appeared to understand the nature of their conversation and what was happening to him. However, the driver admitted he had difficulty in understanding what Simpson was saying. The strongest testimony supporting Simpson's competence was the testimony of the ambulance driver's daughter who was an assistant activities director at the nursing home where Simpson lived. She stated he was able to participate in activities, knew when to take his medicine, and, in her opinion, was capable of recognizing the nature, effect, duties, and obligations of a marriage contract.

The minister who performed the wedding ceremony testified that

although he did not remember the occasion, his methods were such he would not have performed the ceremony if he thought Simpson was incompetent. Wilma's sister stated she was a witness to the marriage ceremony and noticed Simpson was anxious to get married, had no trouble answering the minister's questions, and understood he had to have a blood test in order to get married. She testified Simpson knew what was transpiring and was competent to marry. Wilma testified to visiting Simpson two or three times a week at the nursing home where he lived and talking with him about marriage, which he seemed to understand. Another witness testified Simpson had mentioned prior to the ceremony that he was going to get married.

The foregoing evidence was clearly sufficient for the trial court to have found Simpson did not understand the nature, effect, duties, and obligations of a marriage. The finding was not contrary to the manifest weight of the evidence.

■■ For the first time, on appeal, Pape requests a declaration that if Simpson dies before the proceedings concerning the creation of a constructive trust are established, the case may continue. Even if this matter were presented to the circuit court, it would not constitute a proper request for a declaratory judgment. Such an order would not terminate any part of the controversy giving rise to these proceedings. (Ill. Rev. Stat. 1987, ch. 110, par. 2—701(a).) The request is merely an improper one for an advisory opinion. *In re Estates of Rice* (1979), 77 Ill. App. 3d 641, 396 N.E.2d 298.

As previously stated, we affirm the circuit court's order of November 6, 1989, in its entirety.

Affirmed.

KNECHT, P.J., and STEIGMANN, J., concur.