*In re* MARRIAGE OF WAYNE DAVIS, Petitioner-Appellee, and BETTY DAVIS, Respondent-Appellant.

Fifth District No. 5—90—0307

Opinion filed June 27, 1991.—Rehearing denied August 13, 1991.

Hoefert & Perica, P.C., of Alton, for appellant.

Barbara Crowder, of Crowder & Taliana, of Edwardsville, for appellee.

PRESIDING JUSTICE RARICK delivered the opinion of the court:

Respondent, Betty Davis, appeals from the order entered by the circuit court of Madison County granting the petition for declaration of invalidity of marriage filed by petitioner, Wayne Davis, through his guardian. We affirm.

Betty and Wayne Davis were originally married in December of 1958. In August of 1978, Wayne Davis was declared incompetent, and Wayne's sister purportedly was appointed as guardian of Wayne's person and estate. The marriage of Betty and Wayne subsequently was dissolved in April of 1979 in Missouri. On July 17, 1982, however, Betty and Wayne remarried in Las Vegas, Nevada, while Wayne's sister was still the guardian of her brother's estate and person. After their second marriage, Betty and Wayne resided in Missouri and then in Florida. Eventually Betty was appointed guardian of her husband's estate and person in September of 1983 with the consent of Wayne's sister. Betty and Wayne continued to live together as husband and wife in Florida until September of 1987. At that time, Wayne returned to Illinois. Guardianship was returned to his sister in January of 1989. In the order retransferring guardianship, the court also authorized Wayne's sister to proceed in Illinois to have the second marriage of Wayne and Betty declared void. The court noted Betty ex-

pressly consented to Illinois' jurisdiction over her. Wayne's sister thereupon filed a petition for declaration of invalidity of marriage on February 21, 1989. Betty responded that the petition was untimely filed and that the trial court lacked subject matter jurisdiction over the matter. The trial court ruled Betty was estopped from asserting the defense of the guardian's petition being time barred because of her knowledge of Wayne's disability. The court further held the petition was timely because of the tolling of the limitation period as a consequence of the parties' residing outside Illinois after the second marriage ceremony. The court concluded the marriage of Betty and Wayne was invalid and accordingly granted the guardian's petition. A new guardian has since been substituted for Wayne's sister, who passed away during these proceedings.

 Betty argues on appeal the trial court did not have subject matter jurisdiction to grant the declaration of invalidity of her marriage to Wayne as the 90-day time limit of section 302 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1989, ch. 40, par. 302) had already passed. Section 302 states in part:

> "A declaration of invalidity of marriage under paragraphs (1) through (3) of Section 301 [in this instance, incapacity] may be sought by any of the following persons and must be commenced within the times specified:
>
> (1) for any of the reasons set forth in paragraph (1) of Section 301 [again, incapacity], by either party or by the legal representative of the party who lacked capacity to consent, no later than 90 days after the petitioner obtained knowledge of the described condition." (Ill. Rev. Stat. 1989, ch. 40, par. 302.)

Betty points out that Wayne's sister had knowledge of the described condition on the very day of the parties' second marriage. She had been appointed as guardian of Wayne's person and estate long before the parties' second marriage and in fact continued in that capacity for over 1½ years after the ceremony. Moreover, she had attempted to talk Wayne and Betty out of their impending second marriage; therefore, she obviously was aware of the marriage's occurrence. Consequently, Betty believes the 90-day time limit began to run on the date of the parties' second marriage, July 17, 1982. Because Wayne's sister did not file the petition to invalidate the marriage until February 21, 1989, some 6½ years later, Betty concludes the trial court lacked subject matter jurisdiction to rule on the matter. In general, we would agree. Section 13—208 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 13—208), however, provides that a statute of limitations is tolled during those periods the defendant is outside of the

State of Illinois unless he or she is subject to the jurisdiction of the court under a long-arm provision, in this instance maintaining a matrimonial domicile in Illinois. (See Ill. Rev. Stat. 1989, ch. 110, par. 2—209(a)(5).) Betty and Wayne did not reside in Illinois at any time after their second marriage; consequently, no marital domicile had ever been created here. With no applicable long-arm provision, no action for invalidity of the parties' marriage could be brought in Illinois until Betty expressly consented to jurisdiction over her. Wayne certainly was in no position to bring the action himself, and a person who is in fact incapacitated cannot be held accountable for delay in seeking redress through the courts. (See *Payton v. Payne* (1980), 90 Ill. App. 3d 892, 896, 414 N.E.2d 33, 36.) Moreover, Betty's conflict of interest, being both wife and guardian, prevented any failure to act on her part being held against a successor guardian. (See *Payton*, 90 Ill. App. 3d at 896-97, 414 N.E.2d at 36-37.) This being so, the 90-day limit could not start to run until Betty consented to Illinois jurisdiction and a guardian with the power to file a petition to have the marriage declared invalid was appointed. (See *In re Driskell* (1990), 197 Ill. App. 3d 836, 841, 555 N.E.2d 428, 430-31.) These two conditions did not occur until January 24, 1989. As a result, the 90-day period did not begin to run until January 24, 1989. With the petition being filed on February 21, 1989, less than one month later, we must conclude the action was timely filed. The trial court therefore correctly denied Betty's challenge based on the statute of limitations. See *Payton*, 90 Ill. App. 3d at 897, 414 N.E.2d at 37.

We also find no error in the trial court's ruling that Wayne Davis lacked the capacity to enter into a valid marriage contract. Capacity to contract requires that a party be of sufficient mental ability to appreciate the effect of what he is doing. (See *Larson v. Larson* (1963), 42 Ill. App. 2d 467, 473, 192 N.E.2d 594, 597.) Wayne as a ward did not have the capacity to enter into a marriage. He had and has been under a guardianship of both his estate and person since 1978, and at least one doctor believes Wayne remains in need of such guardianship. Even Betty admits Wayne is mentally incompetent. When a party lacks the capacity to enter into a marriage at the time of being solemnized, the court is to enter a judgment declaring such marriage invalid. (See Ill. Rev. Stat. 1989, ch. 40, par. 301; see also *Larson*, 42 Ill. App. 2d at 473, 192 N.E.2d at 597.) Sufficient evidence existed on the record here to establish Wayne Davis did not understand the nature, effect, duties, and obligations of his second marriage; consequently, the trial court's findings are not against the

manifest weight of the evidence. See *Driskell*, 197 Ill. App. 3d at 845-46, 555 N.E.2d at 433-34.

For the aforementioned reasons, we affirm the judgment of the circuit court of Madison County.

Affirmed.

WELCH and CHAPMAN, JJ., concur.