(No. 70561.—

JEAN A. PAPE *et al.*, Appellants, v. WILMA LOUISE BYRD, Who Now Calls Herself Wilma Louise Driskell, Appellee.

*Opinion filed September 26, 1991.—Rehearing denied December 2, 1991.*

G. William Horsley, of Springfield, for appellants.

Grady E. Holley and Robert W. Mueller, of Holley Law Offices, of Springfield, for appellee.

JUSTICE FREEMAN delivered the opinion of the court:

Plaintiffs, Jean A. Pape, guardian of the person of Simpson Driskell, Jr., a disabled adult, individually, and as a member of a class consisting of approximately 125 people who are in the same class of remaindermen and

reversionaries, and the class, appeal from the affirmance by the appellate court of an order entered November 6, 1989, by the circuit court of Sangamon County. 197 Ill. App. 3d 836.

## BACKGROUND

On September 23, 1988, plaintiffs filed a four-count complaint in chancery in the circuit court of Sangamon County against defendant, Wilma Louise Byrd, who now calls herself Wilma Louise Driskell. Two counts of the complaint sought a declaration of invalidity of a marriage between Simpson Driskell, Jr. (Simpson), and defendant performed on August 20, 1985. The remaining counts of the complaint sought to designate a class consisting of plaintiff Pape (hereinafter Pape), in her individual capacity, and many others holding remainder or reversionary interests in the estate of Simpson's grandfather. The remaining counts also sought to establish a constructive trust, for the benefit of the class, of funds being administered by the guardian of Simpson's estate. On May 9, 1989, defendant filed a petition, in the probate case related to his guardianship, for the removal of Pape as guardian of the person of Simpson. After consolidation of the two cases, the court entered the order from which these appeals are taken.

## FACTS

Simpson was born on August 27, 1912. At 12 years of age, Simpson had middle-ear disease and encephalitis. Mental retardation was apparent at age 16 when Simpson was found to have an IQ of 38 and a mental age of approximately 6 years. On September 19, 1930, he was found by the probate court of Sangamon County to be feeble-minded. A conservator was appointed for Simpson on November 28, 1939. Simpson's grandfather's will left his estate, upon the death of Simpson's grandmother, to

Simpson "during his life" and then to the heirs of Simpson's body or, if Simpson were to die without any heirs of the body, to the grandfather's and his wife's heirs. There has accumulated in Simpson's guardianship account approximately $150,000 from his grandfather's estate.

Defendant, a second cousin, once removed, was appointed Simpson's guardian on October 6, 1980, and served as such until she resigned in January 1985. Thereafter, Simpson was without a guardian for a period of several months. During that period, Simpson and defendant were married on August 20, 1985. On August 23, 1985, John Ray, a distant cousin of Simpson, was appointed his guardian. On November 26, 1985, defendant petitioned for the removal of Ray as Simpson's guardian. In her petition, defendant alleged, *inter alia*, that, as Simpson's wife, she was entitled to preference for appointment as his guardian. On December 31, 1985, Ray filed a counterpetition requesting a determination of the validity of Simpson's marriage to defendant. Therein, he alleged that the marriage was void because Simpson was feeble-minded at the time of the marriage, incapable of performing a marriage ceremony or of entering into a marriage contract. (See Ill. Rev. Stat. 1985, ch. 40, par. 301(1).) Ray resigned as Simpson's guardian on June 6, 1988, prior to a resolution of his and defendant's respective petitions. That same day, Pape, another distant cousin of Simpson, was appointed his successor guardian.

On September 23, 1988, plaintiffs filed the chancery complaint seeking, *inter alia*, a declaration of the invalidity of Simpson's marriage to defendant. Count I thereof sought a declaration of invalidity on the ground that the marriage, having been performed on the same day the license therefor was issued, violated section 207 of the Illinois Marriage and Dissolution of Marriage Act (the Marriage Act) (Ill. Rev. Stat. 1987, ch. 40, par. 1 *et seq.*), which provides that a marriage license becomes effective

one day after its issuance unless a court orders that it is valid when issued (Ill. Rev. Stat. 1987, ch. 40, par. 207).

Count II of the chancery complaint sought a declaration of invalidity of the marriage on the ground that at the time thereof Simpson lacked the mental capacity to understand and consent to the contract of marriage. (See Ill. Rev. Stat. 1987, ch. 40, par. 301(1).) Therein, Pape alleged, *inter alia*, that:

(1) on September 29, 1930, Simpson was found to be feeble-minded, has ever since remained feeble-minded, and at all times mentioned was feeble-minded and had no ability to comprehend the execution of any contract and the results thereof, including a contract of marriage;

(2) at the time of his purported marriage to defendant, Simpson lacked the mental capacity to understand and to consent to the contract of marriage and that, ever since he was found to be feeble-minded, Simpson has suffered from mental retardation and had development problems to the extent that he was incapable of knowing that he had even gone through a ceremony of marriage;

(3) as a matter of equity, she should be allowed to proceed with the counterpetition filed by Ray which had not been ruled upon prior to his resignation as Simpson's guardian.

On May 4, 1989, defendant filed her answer and affirmative defenses to plaintiffs' complaint. Defendant's affirmative defenses asserted that count II of plaintiffs' complaint was barred by the statute of limitations provided in section 302(a)(1) of the Marriage Act. That section requires that actions to declare the invalidity of the marriages of mental incompetents, brought pursuant to section 301(1) of the Marriage Act, be filed within 90 days of the date the petitioner learns of the "described condi-

tion" of the incompetent. (Ill. Rev. Stat. 1989, ch. 40, par. 302(a)(1).) The same day, defendant filed a petition in the probate case related to Simpson's guardianship seeking Pape's removal as Simpson's guardian and her appointment as such in place of Pape. After having earlier answered the petition, Pape sought leave, on September 25, 1989, to file a counterclaim to the petition raising the same issues as counts I and II of the chancery complaint.

On November 6, 1989, the circuit court of Sangamon County entered an order, *inter alia*:

(1) denying Pape's motion for summary judgment on the issue whether Simpson and defendant's marriage was void due to the violation of section 207 of the Marriage Act;

(2) denying defendant's petition to remove Pape as Simpson's guardian;

(3) granting defendant's motion for summary judgment on count II of plaintiffs' chancery complaint and Pape's counterclaim in the probate action on the ground that those actions were barred by section 302(a)(1) of the Marriage Act;

(4) finding that Pape had shown by a preponderance of the evidence that Simpson was incompetent at the time of the marriage to defendant and that, but for the bar of the statute of limitations, it would declare the marriage invalid.

Both sides appealed the aspects of the trial court's judgment unfavorable to them. The Appellate Court, Fourth District, affirmed in all respects. (197 Ill. App. 3d 836.) The issues presented for review are whether: (1) the limitations period provided in section 302(a)(1) of the Marriage Act barred count II of plaintiffs' chancery action for a declaration of invalidity of Simpson's marriage to defendant; (2) Pape's counterclaim to defendant's action to remove her as Simpson's guardian satisfied the requirements of section 13—207 of the Code of Civil Proce-

dure (the Code) (Ill. Rev. Stat. 1989, ch. 110, par. 13–207); (3) Simpson's marriage to defendant was invalidated by their failure to comply with section 207 of the Marriage Act; (4) defendant's unclean hands with regard to her marriage to Simpson is a ground upon which to invalidate the marriage; (5) the courts below erred in not finding constructive fraud on defendant's part and in not imposing a constructive trust for the benefit of the plaintiff class; and (6) Simpson lacked the mental capacity required to enter the marriage to defendant.

We: (1) affirm the rulings below relating to the first and sixth issues presented; (2) reverse the rulings below relating to the second issue; and, in view thereof, (3) find it unnecessary to address the remaining issues.

## STANDING

Before addressing the merits of the parties' appeals, we must address defendant's assertion that Pape lacks standing to prosecute an appeal to this court as a result of Simpson's death on July 28, 1990. In so arguing, defendant relies upon section 302(b) of the Marriage Act, which provides that a declaration of invalidity of marriage may not be sought after the death of either party to the marriage under, *inter alia*, section 301(1) thereof. (Ill. Rev. Stat. 1989, ch. 40, par. 302(b).) This court previously rejected this argument when we denied defendant's motion, based thereon, to dismiss plaintiffs' petition for leave to appeal the appellate court's rulings herein. In raising the standing issue anew, defendant merely repeats the same arguments made in her motion to dismiss. As such, we again reject her motion to dismiss plaintiffs' appeal based on the lack of standing.

## SECTION 302

In affirming the trial court's application of the statute of limitations of section 302(a)(1) in bar of count II of

plaintiffs' chancery complaint, the appellate court first reasoned that Pape had knowledge of Simpson's condition during the entire period from June 6, 1988, the date of her appointment as his guardian, to September 23, 1988, the date the chancery complaint was filed. As such, the court concluded that the 90-day limitations period had expired as of the latter date.

On appeal of the appellate court's ruling with respect to section 302(a)(1), Pape first contends that the court erred in deciding that the 90-day limitations period provided therein starts to run as of the date of the appointment of a guardian of the allegedly incompetent person to a marriage sought to be annulled under section 301. In this regard, Pape asserts that the mere appointment of a guardian of a person is not *ipso facto* proof that the ward cannot contract a marriage. Rather, Pape asserts, it was necessary for her to gather evidence that Simpson was, in fact, incompetent to have entered the marriage contract with defendant before she could properly bring an action for a declaration of its invalidity based on such incompetency.

We agree with Pape that the appointment of a guardian of a person is not sufficient, in and of itself, to show that the person was incompetent to have consented to a marriage. In this regard, we note that section 11a—3 of the Probate Act of 1975 provides, *inter alia*, that a court may adjudge a person disabled[1] and may appoint a guardian of his person if, because of his disability, he lacks sufficient understanding or capacity to make or

---

[1]Sections 11a—1 and 11a—2 of the Probate Act define a disabled person as one who, *inter alia*, is developmentally disabled as the result of any condition which results in impairment caused by or similar to that caused by mental retardation and who, because of his developmental disability, is not fully able to manage his person or estate. Ill. Rev. Stat. 1989, ch. 110½, pars. 11a—1, 11a—2.

communicate responsible decisions concerning the care of his person. In contrast, section 301 of the Marriage Act provides that a declaration of invalidity of a marriage may be obtained where a party, *inter alia*, lacked the capacity to consent to the marriage because of, *inter alia*, mental incapacity or infirmity. (Ill. Rev. Stat. 1989, ch. 40, par. 301.) Moreover, a person lacks capacity to consent to a marriage where he is unable to understand the nature, effect, duties and obligations of marriage. (*Larson v. Larson* (1963), 42 Ill. App. 2d 467, 473.) It is thus clear that the test of incapacity in each of the foregoing provisions is limited and does not speak to the incapacity required for purposes of the other provision. Moreover, Illinois case law recognizes the difference between the types of incapacity involved in each provision.

For instance, it is well established that the appointment of a conservator is not conclusive on the issue of possession of sufficient mental capacity to execute a will but may be considered as evidence on that issue. (*Pendarvis v. Gibb* (1927), 328 Ill. 282, 292; *In re Estate of Basich* (1979), 79 Ill. App. 3d 997, 1001.) Similarly, in this case, we do not find the appointment of a guardian of the person of Simpson, on the basis of his incapacity to make or communicate decisions regarding his care, conclusive on his capacity to have understood the nature, effect, duties and obligations of a marriage to defendant, although the former fact is strong evidence of the latter.

As such, we agree with Pape that where, as in the instant case, a guardian of a person is appointed after her ward's marriage, the limitations period provided in section 302(a)(1) of the Marriage Act is not to be automatically measured from the date of the appointment of the guardian. Rather, a court must inquire as to the date upon which the guardian learned of sufficient facts to believe or conclude that her ward, in addition to being incompetent to care for his person, was also incompetent

to have entered the marriage which the guardian subsequently seeks to invalidate. While that date will vary in each case, it can generally be recognized that the longer a guardian has served, the sooner she should have sufficient facts to form that belief or reach that conclusion.

The foregoing notwithstanding, we find from the record that Pape had sufficient facts, as of the date of her appointment as guardian of the person of Simpson, to have formed the belief or reached the conclusion that he lacked the requisite capacity to have entered the marriage with defendant.

In support of the petition filed in 1987 by John Ray, Pape's immediate predecessor as Simpson's guardian, to invalidate the marriage to defendant, Pape, along with several other of the remaindermen comprising the plaintiff class, filed a letter with the circuit court of Sangamon County. While the letter is not in the record, Pape's testimony as to its contents clearly reveals that she had knowledge, or at least professed to have knowledge, in 1987, that Simpson lacked the mental capacity to have entered the marriage with defendant.

At a September 1989 evidentiary hearing, Pape was asked a series of questions by defendant's counsel relating to the letter signed by her, among others, in support of Ray's petition. Specifically, Pape was asked the following questions and gave the following responses thereto:

"Q. During the period that [Ray] was the guardian of the person, Simpson Driskell, which was prior to December, 1987?

A. Right.

Q. You signed then this letter that he had prepared, is that right?

A. All right, yes, sir.

Q. And I note in the last paragraph that one of the purposes behind your signing at that time was to join with Mr. Ray as guardian of the person.

A. To attack the validity of the marriage of Simpson Driskell and Wilma Driskell, that's right."

Considering the allegations of Ray's petition to invalidate Simpson's marriage to defendant in light of Pape's admission regarding the purpose of the letter, it is clear that she must be held to have known of sufficient facts to form a belief or reach a conclusion that Simpson lacked the capacity to enter the marriage with defendant at the time she signed the letter and, thus, as of the date of her appointment as Simpson's guardian.

In his petition, Ray alleged that Simpson "was declared feeble-minded many years ago and is still feeble-minded." Ray further alleged that the marriage between Simpson and defendant was void because Simpson was feeble-minded at the time of the marriage and incapable of performing a marriage ceremony or of entering into a marriage contract.

Pape, having joined, in December 1987, in the petition to have Simpson's marriage to defendant invalidated on the ground of incapacity, cannot now assert that, before bringing her own action to invalidate the marriage after her appointment as Simpson's guardian, she needed time to gather evidence as to whether he, in fact, lacked the capacity to have entered the marriage.

*Payton v. Payne* (1980), 90 Ill. App. 3d 892, which Pape cites as supporting her right to maintain an action for a declaration of invalidity of Simpson's marriage to defendant, does not, in fact, do so. In *Payton,* the court allowed a successor guardian appointed after the marriage of his ward to maintain an action to declare the marriage invalid although, like Pape, he had obtained knowledge of the ward's incapacity to enter into the marriage both prior to his appointment and more than 90 days before filing the action. In doing so, the court held that prior to his appointment as such, the guardian did not have standing or a duty to bring an action to de-

clare the marriage invalid. The court further found that the failure of the predecessor guardian, the ward's wife, to bring such an action did not bar her successor from doing so due to the wife's conflict of interest arising from her dual status as wife and conservator. *Payton*, 90 Ill. App. 3d at 896-97.

Notwithstanding the similarities between the situation of the guardian in *Payton* and Pape, she ignores that the former filed the action within 42 days of his appointment, *i.e.*, the date upon which he acquired standing to do so, and thus, well within the 90-day limitations period of section 302. (*Payton*, 90 Ill. App. 3d at 895.) Pape, in contrast, did not file the action at issue until 108 days after she was appointed and similarly acquired standing to do so. As such, *Payton* is ultimately unavailing to her.

In view of the foregoing, the trial and appellate courts did not err in finding that section 302(a)(1) of the Marriage Act barred Pape's action for a declaration of invalidity of Simpson's marriage to defendant.

## SECTION 13—207

The appellate court also rejected Pape's argument that, even if count II of the chancery complaint was barred by section 302(a)(1), her counterclaim in the probate proceeding, which raised the same issue as that count, was timely pursuant to section 13—207 of the Code of Civil Procedure. Section 13—207 provides that a defendant may plead a counterclaim, otherwise barred by a statute of limitations while held and owned by her, to any action the cause of which was owned by the plaintiff or person under whom she claims before the counterclaim was so barred. Ill. Rev. Stat. 1989, ch. 110, par. 13—207.

Specifically, the court concluded that the action as to which Pape's counterclaim was pled, defendant's petition

to remove her as Simpson's guardian, was not "owned" by defendant or anyone under whom she claimed as that term is used in section 13—207. In so doing, the court noted, citing *In re Estate of Sherwood* (1965), 56 Ill. App. 2d 334, 338-39, that a proceeding to remove a guardian is in the nature of a proceeding on behalf of the State for the purpose of protecting an incompetent ward. It further noted, citing section 11a—3(a) of the Probate Act (Ill. Rev. Stat. 1985, ch. 110½, par. 11a—3(a)), that any reputable person was entitled to bring such an action.

The appellate court further reasoned that neither did Pape's counterclaim concern an action which she owned in the capacity in which she was responding to defendant's petition for removal. That is, while Pape, in defending against defendant's petition, was acting on her own behalf in defending her right to be guardian, she was, in pursuing the counterclaim for a declaration of invalidity of Simpson's marriage to defendant, acting on his behalf as his guardian. Therefore, the court concluded that Pape was attempting to counterclaim in a capacity different from that in which she was responding to defendant's petition and in regard to an action not owned by her.

On appeal of the appellate court's ruling with respect to section 13—207 of the Code, Pape first asserts that, contrary to the court's reasoning that defendant did not own the cause of action as to which her counterclaim was pled, defendant qualified as an "interested person" as that term is used in section 23—2 of the Probate Act.[2] Specifically, Pape asserts, defendant was a person inter-

---

[2]Section 23—2 provides that on the petition "of any interested person" or on its own motion, a court may remove a personal representative for any of several causes listed therein. Ill. Rev. Stat. 1989, ch. 110½, par. 23—2.

ested in her removal as Simpson's guardian by virtue of her claimed status as his wife and by virtue of her status, arising therefrom, as one of Simpson's heirs.

Pape next challenges the appellate court's reliance on the fact that she did not bring her counterclaim in the same capacity in which she was responding to defendant's petition for removal. Specifically, she points out that the only person who could bring an action to declare Simpson's marriage to defendant invalid was his personal representative and that she filed the action as such, not as an individual. Pape further notes that in bringing the counterclaim therefor she was both complying with her duty and exercising her right to do so as Simpson's guardian.

We find that the trial and appellate courts erred in holding that Pape's counterclaim did not satisfy the requirements of section 13—207 in order to avoid the limitations bar of section 302.

Firstly, we agree with Pape that, contrary to the holdings below, defendant did "own" the cause of action to remove her as Simpson's guardian as that term is used in section 13—207. As the appellate court noted, a proceeding to appoint, and, thus, by implication, one to remove, a guardian is a proceeding in the nature of an action on behalf of the State for the purpose of protecting the incompetent person concerned. (See *In re Estate of Pine* (1958), 16 Ill. App. 2d 584; *Joost v. Racher* (1909), 148 Ill. App. 548.) However, we do not agree with the appellate court that it necessarily follows from the nature of such a proceeding that no one private individual can ever "own" a cause of action to institute such a proceeding as that term is used in section 13—207. In this regard, we note that section 23—2 of the Probate Act allows "any interested person" to petition for the removal of a representative for any of several listed

causes.[3] To the extent that any person is "interested" in the removal of a representative, including a guardian of the person of an incompetent, such person may be said to have standing to bring an action therefor. (See, *e.g., In re Jennings* (1975), 32 Ill. App. 3d 857, 859-60 (grandmother had standing to seek termination of guardianship of grandchildren and appointment of herself as guardian under provision of Juvenile Court Act allowing minor or "any person interested" in the minor to apply for a change in custody and appointment of new custodian or guardian), *aff'd* (1977), 68 Ill. 2d 125, 129; *Bell v. Grossenbacher* (Tex. Civ. App. 1968), 432 S.W.2d 575 (son had legal standing as an interested person to petition for removal of guardian of incompetent father).) Moreover, to the extent that an interested person may be said to have standing to bring such an action, we believe that such person can be also said to "own a cause of action" therefor within the meaning which the legislature intended those words to have in section 13—207.

Thus, contrary to the appellate court's conclusion, defendant did own a cause of action for the removal of Pape as Simpson's guardian. Moreover, defendant owned the action as of the date of Pape's appointment and, thus, before Pape's counterclaim was barred by the expiration of the limitations period established in section 302(a)(1) of the Marriage Act, as further required by section 13—207.

Similarly, we find that the appellate court also erred in concluding that Pape's counterclaim to defendant's action for her removal, being brought as it was in her

---

[3]In this regard, we agree with Pape that the appellate court incorrectly cited section 11a—3a of the Act in noting that "a reputable person" can bring an action to remove a guardian. (Ill. Rev. Stat. 1989, ch. 110½, par. 11a—3(a).) That section deals with the appointment, not the removal, of a guardian.

capacity as Simpson's guardian, was not, for that reason, an action owned by her, as that term is used in section 13—207. Just as defendant owned a cause of action for Pape's removal as Simpson's guardian by virtue of her standing to bring such an action, we find that Pape owned a cause of action for a declaration of invalidity of Simpson's marriage to defendant within the meaning of section 301 of the Marriage Act by virtue of the standing conferred upon her to do so by section 302 of the Act. *In re Marriage of Drews* (1986), 115 Ill. 2d 201, 204.

In this regard, we further conclude that the appellate court erred in relying, as an additional ground for its ruling, upon the fact that Pape was attempting to plead a counterclaim against defendant in a different capacity, *viz.*, as Simpson's guardian, than that in which she was defending against defendant's action for her removal as such, *viz.*, as an individual. Section 13—207 does not contain any language limiting its availability to defendants whose counterclaims are brought only in the same capacity in which they are defending against the actions to which their counterclaims are pled. Moreover, we are offered no compelling reason by defendant for so construing section 13—207 and therefore decline to do so. *Cf. Bethlehem Steel Corp. v. Chicago Eastern Corp.* (7th Cir. 1988), 863 F.2d 508 (fact that counterclaim was related to a prior transaction between the parties and not to that which was the subject of the action to which it was pled did not require its dismissal in view of language of section 13—207 allowing such claims to be pled to "any action"); *Hernas v. City of Hickory Hills* (N.D. Ill. 1981), 507 F. Supp. 103 (fact that counterclaim was not directly related to the plaintiff's claim did not require its dismissal in view of fact that now section 13—207 literally extends to all counterclaims, which need not be related to the original claim).

In view of our conclusion that the courts below erred in construing section 13—207 as not saving Pape's counterclaim despite her failure to comply with the limitations period of section 302(a)(1) of the Marriage Act, we need not address Pape's further arguments related to that error.

## REMAINING ISSUES

Pape also asserts that the appellate court also erred: (1) in affirming the trial court's conclusion that Simpson and defendant's failure to wait one day after obtaining their marriage license before getting married, as provided in section 207 of the Marriage Act, did not invalidate the marriage based on *Haderaski v. Haderaski* (1953), 415 Ill. 118; and (2) in not holding that Simpson's marriage to defendant should be set aside on the grounds that defendant was guilty of unclean hands. Additionally, all plaintiffs assert that the courts below erred in not finding Simpson's marriage to defendant presumptively fraudulent based on defendant's violation of her fiduciary relationships to Simpson, as his former guardian, and to the plaintiff class, and in not imposing a constructive trust for the benefit of the class upon the funds in the guardianship accounts belonging to Simpson. In view of our prior holding that Pape's counterclaim satisfied the requirements of section 13—207 of the Code, our subsequent finding, in defendant's cross-appeal, that Simpson lacked the requisite mental capacity to enter the marriage with defendant, and the judgment in Pape's favor mandated thereby, we find no need to address these issues.

## SIMPSON'S COMPETENCY TO MARRY

In her cross-appeal, defendant asserts that the trial court's finding that Simpson was incompetent at the

time of the marriage to defendant was against the manifest weight of the evidence. We disagree.

We find that the appellate court's opinion thoroughly discussed the relevant evidence and applied the proper standard of review to hold that the trial court's finding was not against the manifest weight of the evidence. (197 Ill. App. 3d at 844-46.) Consequently, we affirm the finding of the trial and appellate courts that Simpson lacked the requisite mental capacity to enter into the marriage with defendant. In view thereof and our prior finding that Pape's counterclaim for a declaration of invalidity of Simpson's marriage to defendant met the requirements of section 13—207 of the Code, we enter judgment for Pape thereon.

## CONCLUSION

For all of the reasons stated herein, we: (1) affirm the judgments of the trial and appellate courts that count II of plaintiffs' chancery complaint for a declaration of invalidity of the marriage of Simpson Driskell, Jr., and defendant is barred by section 302(a)(1) of the Illinois Marriage and Dissolution of Marriage Act; (2) reverse the judgments of the trial and appellate courts that Pape's counterclaim for a declaration of invalidity of the marriage of Simpson Driskell, Jr., to defendant did not satisfy the requirements of section 13—207 of the Code of Civil Procedure; (3) find it unnecessary to address the remaining issues raised in plaintiffs' appeal; (4) affirm the trial and appellate courts' findings that Simpson Driskell, Jr., lacked the requisite mental capacity to enter into the marriage with defendant; (5) enter judgment for Pape on her counterclaim to declare invalid the marriage of Simpson Driskell, Jr., to defendant.

*Appellate court affirmed in part and reversed in part; circuit court affirmed in part and reversed in part.*